**In re Les DEVILLE, Debtor.**

**In re Steven J. Daggett, Debtor.**

**In re Daniel Miller, Debtor.**

**Daniel Miller, Jr.; Arlo Hale Smith, Appellants,**

**v.**

**Noreen Cardinale, Appellee.**

**BAP Nos. NC–01–1188–MaPK, NC–01–1226–MaPK.**

**Bankruptcy Nos. 00–31727[1], 00–32297, 00–43878.**

**Adversary Nos. 00–3142 DM, 00–3182 DM.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 29, 2001.

Filed June 25, 2002.

---

1. The above-captioned bankruptcy cases and adversary proceedings were procedurally consolidated by the bankruptcy court on the issue of sanctions.

Arlo Hale Smith, San Francisco, CA, Daniel Miller, Jr., San Bruno, CA, pro se appellants.

Thomas Eastridge, Caron, Eastridge & Hanson, Alameda, CA, for Noreen Cardinale, appellee.

Before MARLAR, PERRIS and KLEIN, Bankruptcy Judges.

### OPINION

MARLAR, Bankruptcy Judge.

### INTRODUCTION

Appellants challenge the bankruptcy court sanction award against them, which included a compensatory sanction of reasonable attorneys' fees and costs, plus a penalty for deterrence purposes, both of which were awarded to the opposing party. Appellants contend that the court exceeded its authority and violated due process. We AFFIRM in part, and REVERSE and REMAND in part.

### FACTS

Arlo Hale Smith and Daniel Miller, Jr. ("Appellants") were personal friends and business associates who owned a real estate firm. Smith was an attorney and licensed real estate broker; Miller was an agent operating under Smith's license.

A complaint was filed in 1998 by plaintiff/appellee Noreen Cardinale ("Cardinale") against Miller, Steven Daggett and Les DeVille, among others, in the California superior court. Smith represented the defendants in the state court action.

In order to delay the state court trial, Smith orchestrated a series of bankruptcy

filings and notices of removal of the state court action to bankruptcy court. In October, 1999, and June, 2000, respectively, Smith filed voluntary chapter 13[2] bankruptcy petitions on behalf of DeVille and then Daggett, in the Oakland Division of bankruptcy court, along with notices of removal in both cases, which halted the state court trial each time.

Cardinale moved for remand in each case, and subsequently dismissed Daggett from the state court action. On December 7, 1999, DeVille's first bankruptcy case was dismissed. Chief Bankruptcy Judge Edward Jellen, of the Oakland Division, remanded the action in both cases, and a new state court trial date was set for July 17, 2000.

On July 14, 2000, Smith filed a second, new bankruptcy petition and notice of removal to bankruptcy court on behalf of DeVille, but this time the venue choice was the San Francisco Division. Bankruptcy Judge Dennis Montali subsequently found that this filing violated Bankruptcy Rule 9027(a)(1), which provides that a "notice of removal shall be filed with the clerk for the district and division within which is located the state or federal court where the civil action is pending," which was the Oakland Division.

On July 17, 2000, Cardinale dismissed DeVille from the state court action, and filed an *ex parte* motion for remand in the second DeVille bankruptcy case.

### The First Order To Show Cause

On July 21, 2000, Judge Montali, on his own motion, issued an order to show cause ("OSC") setting a hearing on the remand motion and for sanctions against Smith. In pertinent part, the OSC stated:

[I]t appears from a review of the Ex Parte Application and the Remand Motion that counsel for the debtor and the adversary proceeding defendants is engaging in a pattern of manipulation of the bankruptcy system in order to frustrate prosecution of the state court action initiated by plaintiff. In view of Chief Judge Jellen's remand of this action to the Contra Costa Superior Court, the July 14th removal by Arlo H. Smith, Esq. on behalf of Les DeVille seems patently improper in several respects and cause for sanctions under Fed. R.Bankr.P. 9011.

In particular, the removal appears to have been made to the wrong court, notwithstanding the fact that Mr. DeVille's Chapter 13 case was filed in this division. Since the underlying action was pending in the Contra Costa Superior Court, the Oakland Division would have been the proper division for removal, to be followed by a request to a judge of that division for a transfer to this division. In view of Chief Judge Jellen's prior remand, however, it is obvious that counsel intentionally avoided that unattractive alternative.

Second, there does not appear to be a good faith purpose for the removal since Mr. DeVille's filing resulted in an automatic stay under 11 U.S.C. 362(a) that protected him. Why would a protected debtor/defendant need to remove an action to the bankruptcy court when the plaintiff would be required to file a proof of claim here? Where is the jurisdiction of this court over the action against non-debtor defendants? Mr. Smith apparently wishes to use Mr. DeVille's Chapter 13 case to protect the other defendants he represents in this

**2.** Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

case by frustrating the repeated efforts of the Contra Costs [sic] Superior Court to bring this matter to trial.

. . . .

IT IS FURTHER ORDERED that ... Mr. Smith is to show cause in writing why he should not be sanctioned for removing this action, in what appears to have been done for an improper purpose, including the harassment of plaintiff, the unnecessary delay of the Contra Costa Superior Court action, and the needless increase in the litigation costs to be absorbed by plaintiff. Fed. R.Bankr.P. 9011(b)(1). This matter is brought on the court's own initiative pursuant to Fed.R.Bankr.P. 9011(c)(1)(B).

Order to Show Cause, July 21, 2000.

### Remand Revisited

On July 26, 2000, Cardinale filed, and served upon Smith, a revised version of the second remand motion, together with a declaration of her attorney, Thomas Eastridge. Eastridge declared that attorneys' fees had been incurred in the amount of $12,201.75 for "unnecessarily preparing for trial on two occasions, attributable to the defendants [sic] removal actions, as well as preparing the moving papers and appearing in Bankruptcy Court." Smith objected to the fee request.

Following a hearing on the remand motion, Judge Montali remanded the action, and ordered Smith not to remove it again on behalf of any of the defendants without permission from the bankruptcy court.

### Miller's Pro Per Removal Papers

Smith had been ordered by Judge Montali not to remove the state court action again, and Smith was now facing possible sanctions. In spite of the posture of these various events, Smith continued to advise Miller on how to continue the scheme to delay the state court action. On August 11, 2000, Miller, this time apparently acting *in propria persona*, attempted once again to remove the state court action to Daggett's bankruptcy case, which was still pending in the Oakland Division. Miller did this notwithstanding that (1) Daggett had been dismissed as a defendant in the state court action, and (2) Judge Jellen had previously remanded the action in the Daggett bankruptcy case.[3]

### Remand Redux, the Second OSC, and Miller's Bankruptcy Filing

Upon Cardinale's motion, the Daggett bankruptcy case was transferred to the San Francisco Division, and Cardinale filed a third remand motion. In an August 29, 2000 order, the bankruptcy court granted the motion to remand, and retained jurisdiction to enter sanctions or other appropriate relief against Smith and Miller. The order also constituted the court's second *sua sponte* OSC, this time implicating both Smith and Miller. In pertinent part the OSC stated:

> Daniel R. Miller, Jr. removed this matter to the Oakland Division of this court without jurisdiction to do so because no remaining party in the state court action was a debtor in any pending bankruptcy case in the Oakland Division. Defendant Daggett, whose Oakland Chapter 13 case was converted to Chapter 7 on the same day the state court action was removed, had previously been dismissed from the state court action. Further Chief Judge Jellen previously remanded the state court action following removal

---

3. On August 14, 2000, Smith withdrew as Miller's counsel in the state court action. The bankruptcy court later found that Smith actually had encouraged Miller to file his own bankruptcy petition, and to file the removal papers in Miller's bankruptcy case, such that Miller's action in the Daggett case was, supposedly, the result of a miscommunication.

by Arlo Hale Smith, counsel for all defendants and Mr. Daggett and Mr. DeVille in their respective bankruptcy cases.

Mr. Miller's pro per removal papers filed on August 11, 2000 appear to be almost identical to those filed previously by Mr. Smith when he removed the state court action to this division in Mr. DeVille's Chapter 13 case. . . .

. . . .

From the foregoing history of complicity the court infers (and is prepared to find) that Mr. Miller was well aware of the following: Judge Jellen's prior remand of the state court action from the Oakland Division; this court's July 28 instructions to Mr. Smith that he should not file any further removal petitions without prior court approval; Mr. Daggett's dismissal from the state court action; and the fact that the court has under submission sanctions to be imposed against Mr. Smith for his conduct in the prior removal of the state court action to this division.

. . . .

Unless Mr. Smith and Mr. Miller file declarations under penalty of perjury establishing that: (1) Mr. Miller was unaware of Chief Judge Jellen's prior remand of the state court action from the Oakland Division; (2) Mr. Miller did not know of this court's July 28 instructions to Mr. Smith and the prohibition against any further removals without court authority; (3) Mr. Miller was not assisted by Mr. Smith in any way, directly or indirectly in removing this matter to the Oakland Division on August 11, and (4) Mr. Smith did not inform Mr. Miller of this court's July 28 instructions nor assist Mr. Miller in any way, directly or indirectly, with the August 11, 2000 removal, the court will find that Mr. Smith and Mr. Miller have engaged in a

conspiracy to hinder, delay and frustrate plaintiff's efforts, and will issue appropriate sanctions against both of them in addition to the sanctions already being considered against Mr. Smith.

Order to Show Cause, Aug. 29, 2000.

On September 5, 2000, the scheduled new trial date in state court, Miller's chapter 13 petition was filed in the Oakland Division. Cardinale then filed an *ex parte* motion to transfer Miller's case to the San Francisco Division. Cardinale also moved for stay relief in Miller's case. The state court action against Miller was then severed to allow the trial to proceed against the remaining nondebtor defendant.

### Hearings on the OSCs

The motion for stay relief and the first and second OSCs were heard on September 29, 2000. Smith testified, and denied filing Miller's bankruptcy petition. He also testified that Miller knew of the dismissal of both Daggett and DeVille from the state court action, and also of Judge Montali's order prohibiting any further removals of that action.

The bankruptcy court granted Cardinale's motion for stay relief, allowing prosecution of the state court action against Miller to proceed, and continued the OSC hearing to October 27, 2000. On October 26, 2000, Miller voluntarily dismissed his chapter 13 case.

At the October 27, 2000 continued hearing, Miller testified that he had signed a blank bankruptcy petition form, which he had given to Smith, who then completed it and arranged for it to be filed. Miller also testified that the business address listed on his petition was incorrect, and that the proper address was actually in the county of San Mateo, placing venue in the San Francisco Division, not the Oakland Division where it had been filed.

Regarding his attempted removal of the state court action to Daggett's bankruptcy case, Miller testified that Smith had provided a removal form, and then had referred Miller to a paralegal who modified the form. Miller stated that he had then signed the removal form and filed it. When questioned concerning his awareness of the bankruptcy court's orders of remand and prohibitions against any further removals, Miller testified that it was his understanding, from what Smith had told him, that only Smith had been ordered not to attempt further removals.

On December 27, 2000, the bankruptcy court filed its memorandum decision awarding sanctions against Smith and Miller pursuant to Bankruptcy Rule 9011, for filings that were both frivolous and filed for an improper purpose. The court found, in DeVille's second bankruptcy, that Smith had removed the state court action to the wrong division for the purpose of avoiding Judge Jellen's Oakland Division, and that such action violated Bankruptcy Rule 9027 governing removals to the appropriate venue of the bankruptcy court.

The court further found that Smith later removed the action in the Daggett case or assisted Miller in doing so. It found that Smith also filed, or caused to have filed, the Miller bankruptcy petition in the wrong division, and had provided incorrect information in the petition in order to avoid an appearance in the San Francisco Division, where Smith had been ordered, in the strongest terms, to cease filing removal papers. The court concluded:

> Smith orchestrated the serial bankruptcy filings and removals of the Action by the defendants one by one, and ... those actions were spread out so as to maximize the delay, cost and harassment to plaintiff.
>
> . . . .

Smith's removals in the DeVille and Daggett bankruptcies, his participation in Miller's second removal in the Daggett bankruptcy, his intentional misstatements on Miller's bankruptcy petition, and his orchestration of serial bankruptcy filings and removals by the defendants were all part of a scheme to cause unnecessary delay, harass plaintiff and needlessly increase plaintiff's litigation costs.

Memorandum Decision, Dec. 27, 2000, pp. 19–20.

The court found that Miller knew or should have known that Smith was under orders not to file any more removal papers for any of the state court defendants, and that Miller knew that Daggett was no longer a defendant in state court at the time that Miller filed the removal notice in Daggett's case. The court further found that Miller was a "knowing participant" in a "larger scheme of serial bankruptcies and removals by the defendants, one by one, all designed to cause unnecessary delay, needlessly increase plaintiff's litigation costs, and harass plaintiff." *Id.* at 22. Smith, the court found, was the "driving force" in this scheme, and Miller was a "knowing participant." *Id.*

Although the fees requested by Cardinale were $12,201.75, the court determined instead that a reasonable amount of attorneys' fees was a reduced amount of $5,548.50, for which Smith and Miller were then held jointly and severally liable.

However, the court found that *additional* sanctions were warranted in order to deter future misconduct, and stated:

> [I]f awarding attorneys' fees were the only sanction it would likely cost Smith client's [sic] substantially less than defending themselves at trial. Therefore, absent a greater sanction there is a danger that Smith's tactics would appear to

be a cost-effective means to delay or avoid trial.

Memorandum Decision, Dec. 27, 2000, p. 20.

Thus, the court doubled the amount and ordered a joint and several sanction of $11,097.00. It then imposed an additional $5,548.50 sanction against Smith individually.

The court also instructed Eastridge to file and serve a supplemental declaration for Cardinale's attorneys' fees incurred since the first declaration, and allowed time for objections. Eastridge then filed a supplemental request for $15,772.50 in fees and $1,880.95 in costs. Smith objected to the fee request.

On April 2, 2001, the bankruptcy court issued its supplemental memorandum. It determined that Eastridge's July 26, 2000 declaration was the functional equivalent of a Rule 9011 motion for sanctions. The bankruptcy court determined that an additional reduced award for reasonable attorneys' fees should be $12,500.00, plus costs of $1,880.95, for a total additional joint and several sanction of $14,380.95. Against Smith only, the court then added another $12,500.00. In summary, the awards broke down as follows:

*Joint and Several Liability for Reasonable Attorneys' Fees and Costs:*

$ 5,548.50
12,500.00
1,880.95
$19,929.45

*Smith's Individual Liability In Excess of Reasonable Attorneys' Fees and Costs:*

$ 5,548.50
12,500.00
$18,048.50

*Miller's Individual Liability In Excess of Reasonable Attorneys' Fees and Costs:*

$ 5,548.50

*Total Liability In Excess of Reasonable Attorneys' Fees and Costs:*

$18,048.50
5,548.50
$23,597.00

Whereas in the first memorandum decision, the court had applied only Rule 9011, in its supplemental memorandum decision, the court also cited, as alternative authority for awarding attorneys' fees, the court's inherent authority as well as 28 U.S.C. § 1927. The court expressly found that Appellants "acted with subjective bad faith." The sanction, the court expressly held, was not "punitive," but was "intended to compensate plaintiff and to deter Smith and Miller from continuing their pattern of misconduct." Supplemental Memorandum Decision, April 2, 2001, p. 5 n. 2.

On April 2, 2001, the court entered its sanction judgment in favor of Cardinale. On April 4, 2001, Smith filed a letter with the court advising that his response to the supplemental fee request had been overlooked in the court's decision and judgment. The court treated this as a motion for reconsideration. After reviewing the response, the court affirmed its prior decision and denied the letter motion in its second supplemental memorandum decision, dated May 1, 2001. Appellants timely appealed the April 2, 2001 judgment.

### ISSUES

1) Whether the bankruptcy court abused its discretion in imposing sanctions of reasonable attorneys' fees and costs.

2) Whether the imposition of inherent power sanctions complied with the requirements of due process.

3) Whether the penalty portion of the sanction exceeded the court's authority.

### STANDARDS OF REVIEW

 We review the bankruptcy court's assessment of sanctions for an abuse of discretion. *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 283 (9th Cir.1996). A bankruptcy court abuses its discretion if it bases its ruling "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Predovich v. Staffer (In re Staffer)*, 262 B.R. 80, 82 (9th Cir. BAP 2001) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)).

 Whether Appellants' due process rights were violated is a question of law, which we review *de novo*. *Garner v. Shier (In re Garner)*, 246 B.R. 617, 619 (9th Cir. BAP 2000) (whether a procedure comports with due process is a question of law).

### DISCUSSION

#### A. Rule 9011

The bankruptcy court awarded attorneys' fees and costs as a sanction under authority of Bankruptcy Rule 9011. We find that the bankruptcy court erred in this application of Rule 9011.

 Rule 9011, like its counterpart Federal Rule of Civil Procedure 11, is designed to encourage counsel (and parties) to avoid groundless filings or pleadings filed for improper purposes, largely through the imposition of sanctions. Rule 9011 sets forth the requirement that pleadings presented to the court contain certain representations, and that a failure to adhere to the rule may result in sanctions.[4]

Appellants contend that the sanctions imposed were not allowable under Rule 9011 because the court improperly awarded attorneys' fees predicated on a *sua sponte* motion.

#### 1. Attorneys' Fees Awardable Only Upon Motion

 Rule 9011(c) provides that reasonable attorneys' fees may be awarded as a sanction only upon "motion":

(2) **Nature of Sanction; Limitations.** A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, **or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees**

---

4. Rule 9011(b) provides:

(b) **Representations to the Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Bankr.P. 9011(b).

**and other expenses incurred as a direct result of the violation.**

Fed.R.Bankr.P. 9011(c)(2) (emphasis added in text).

A motion for sanctions is further described, in relevant part, in Rule 9011(c)(1)(A):

(A) **By Motion.** A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). . . .

Fed.R.Bankr.P. 9011(c)(1)(A).

The bankruptcy court deemed Eastridge's declaration to be the functional equivalent of a motion within the meaning of Rule 9011. Were that the case, then any fee award, up to the amount of the reasonable fees and costs incurred, could be paid directly to a party. However, we do not believe that Cardinale filed the requisite motion.

Following Cardinale's second motion for remand, the bankruptcy court issued its first OSC, expressly on its own initiative and without prodding from Cardinale. The court did this, presumably, because it had an affirmative interest in the sanction issue, which had not been addressed by Cardinale.

Later, in support of the OSC, Cardinale filed what the court described as a "revised version of the Second Remand Motion, together with a declaration by one of plaintiff's attorneys, Thomas Eastridge, Esq . . . . ." Memorandum Decision, Dec. 12, 2000, pp. 5–6. As described, such a pleading did not meet the requirement that the sanction motion be made separately from other motions or requests. *See Divane v. Krull Elec. Co.,* 200 F.3d 1020, 1025 (7th Cir.1999) ("Permitting a motion for sanctions to be made in conjunction with another motion constitutes an abuse of discretion.").

In addition, the alleged wrongful conduct included the removal of the state court action. However, the revised remand motion was filed too late to enable Appellants to correct the conduct by withdrawing such removal. *Polo Bldg. Group, Inc. v. Rakita (In re Shubov),* 253 B.R. 540, 545 (9th Cir. BAP 2000) *Shubov* (finding that movant did not make her motion until it was too late for respondent to withdraw or correct); *see also* Fed. R.Bankr.P. 9011(c)(1)(A) (21–day "safe-harbor" provision). Thus, Appellants were deprived of their "safe harbor" rights.

After Cardinale filed the third remand motion and motion for stay relief in Miller's newly-filed bankruptcy case, the court then issued its combined order remanding the case and requiring Appellants to show cause why sanctions should not be imposed for this subsequent conduct. The second OSC was also clearly *sua sponte,* springing from the court's concern about the new misconduct. Cardinale did not file another request for additional attorneys' fees until the court directed such a filing in its subsequent decision.

Considering these circumstances, Cardinale's motion, together with Eastridge's declaration, did not comply with the standards for a Rule 9011(c)(1)(A) motion, nor

did it support an award of attorneys' fees under Rule 9011(c)(2).

### 2. Sua Sponte Sanctions Under Rule 9011

■ Under Rule 9011, a court may award "an appropriate sanction" on its own motion, if it first issues an order to show cause describing the specific misconduct. Fed.R.Bankr.P. 9011(c)(1)(B). Rule 9011(c) sets forth the available sanctions, and limits any monetary sanction that is imposed pursuant to a *sua sponte* order to a penalty payable to the court. *Shubov,* 253 B.R. at 546; Fed.R.Civ.P. 11, Advisory Committee Notes to 1993 Amendments. Therefore, the bankruptcy did not have authority to award attorneys' fees to Cardinale as a *sua sponte* sanction under Rule 9011.

### B. Alternate Authority for Attorneys' Fees—Inherent Power

Although Rule 9011 was not applicable for the type of sanction which the court chose in this case, that does not end our analysis. The court also relied on its inherent authority.

■ The full $19,919.34 compensatory award for Cardinale's reasonable attorneys' fees and costs can be sustained on the basis of the court's inherent authority, recognized in § 105(a),[5] to impose sanctions for a pattern of bad faith conduct that transcends conduct addressed by particular rules or statutes. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 51, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.).,* 77 F.3d 278, 283 (9th

Cir.1996). As the Supreme Court explained in *Chambers,* "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Chambers,* 501 U.S. at 50, 111 S.Ct. 2123.

This is a situation in which neither a statute nor the rules of procedure are "up to the task." Federal Rule of Bankruptcy Procedure 9011 does not suffice because the victim did not make the requisite motion following compliance with the mandatory "safe harbor" and because the court may not shift attorneys' fees and costs on its own motion. Fed.R.Bankr.P. 9011(c).

■ Likewise, 28 U.S.C. § 1927 does not suffice because the Ninth Circuit does not regard a bankruptcy court as a "court of the United States." 28 U.S.C. § 1927; *Perroton v. Gray (In re Perroton),* 958 F.2d 889, 896 (9th Cir.1992); *Determan v. Sandoval (In re Sandoval),* 186 B.R. 490, 495–96 (9th Cir. BAP 1995).

■ 28 U.S.C. § 1447(c) allows a court discretion to grant attorneys' fees and costs for an improper removal. The sanction is applicable to bankruptcy removals, but must be tied to specific removals, by virtue of the language "incurred as a result of the removal." 28 U.S.C. § 1447(c); *Billington v. Winograde (In re Hotel Mt. Lassen, Inc.),* 207 B.R. 935, 939 (Bankr. E.D.Cal.1997). On the present record this provision, while applicable, may be of limited utility. The first two removals and remands were handled by a different judge who neither considered nor imposed sanctions. The abusive character of the con-

---

5. Section 105(a) provides:
 (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to pre-

clude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
11 U.S.C. § 105.

duct became more apparent as the number of removals and remands increased. The second judge could not impose sanctions under § 1447(c) for the first two removals and remands because the sanction must be imposed in connection with the remand order. In order for § 1447(c) to be utilized here, the bankruptcy court would need to make further findings that apply the statutory standard of "incurred as a result of the removal" and tie each dollar of the compensatory award to a removal, applying a removal-by-removal analysis. Such an exercise is simply unnecessary in light of the court's inherent power to assess compensatory sanctions.

■ In short, neither the statutes nor the rules afford a straightforward, comprehensive remedy. This appeal presents facts strikingly similar to the course of conduct which was sanctioned under the court's inherent authority in *Chambers*.

### 1. Nature of Inherent Power

In *Chambers*, a party had engaged in several years of vexatious litigation tactics in an effort to thwart the court's jurisdiction. The Supreme Court affirmed the sanction by the district court of almost $1 million. The Court stated:

> "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." ... These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

*Id.*, 501 U.S. at 43, 111 S.Ct. 2123 (citations omitted).

■ Inherent power sanctions may be imposed by the court *sua sponte. See Link*

*v. Wabash R. Co.*, 370 U.S. 626, 629–32, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (inherent power to dismiss a case *sua sponte*); *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765–67, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (inherent power to award fees *sua sponte*); § 105(a).

■ The inherent power to sanction bad-faith conduct is a separate and distinct source of authority, which is not displaced by the federal statutes and rules. *Chambers*, 501 U.S. at 46, 111 S.Ct. 2123. It is broader than Rule 9011 sanctions and "extends to a full range of litigation abuses." *Id.* Thus, a court may sanction pursuant to its inherent authority even when the same conduct may also be punished under another sanctioning statute or rule. *Id.* at 49, 111 S.Ct. 2123 ("[I]nherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."); *Link*, 370 U.S. at 629–32, 82 S.Ct. 1386 (holding, in *sua sponte* dismissal for failure to prosecute, that the existence of Fed.R.Civ.P. 41(b), which allows a party to move for dismissal for lack of prosecution, did not abrogate this "long ... unquestioned" power); *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir.1997) (citing with approval a Third Circuit case which held that it is not necessary for a court to "exhaust all other sanctioning mechanisms prior to resorting to its inherent power").

■ Sanctions under a court's inherent power are justified against a party who willfully disobeys a court order or acts in bad faith, "which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 991–92 (9th Cir.2001). To impose inherent power sanctions, a court must find that a party acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 44, 111 S.Ct. 2123.

■ Here, the bankruptcy court found that Appellants acted with subjective bad faith. The sanctionable conduct of both Smith and Miller included complicity in bankruptcy filings and removal petitions, as part of an overall scheme to harass, delay and increase Cardinale's litigation costs. The bankruptcy court also found that Appellants' actions contravened the court's express orders. A party can show bad faith "by delaying or disrupting the litigation or by hampering enforcement of a court order." *Hutto v. Finney*, 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

It is clear that the bankruptcy court believed inherent sanctions were justified to deter Appellants' ongoing scheme of circumventing prior orders which prohibited further removal efforts, and Appellants' abuse of the bankruptcy process. Moreover, it found that an award of reasonable attorneys' fees would be insufficient to deter Appellants' conduct, and therefore it resorted to its inherent authority.

The bad faith course of conduct was sufficiently egregious that it was not an abuse of discretion for the court to exercise its "inherent authority" sanctioning power and require Appellants to pay all appropriate attorneys' fees and expenses incurred by their adversaries. In this case, the appropriate amount of attorneys' fees and costs was the reasonable amount, determined by the bankruptcy court to be $19,919.34.

### 2. *Notice of Inherent Sanctions*

■ The remaining question regarding implementation of the "inherent authority" sanctioning power regards the question whether notice was sufficient, to alert Appellants so that they could prepare to defend themselves.

■ The fundamental question related to due process is whether Appellants re-ceived any type of notice that was reasonably calculated under all the circumstances to apprise them of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Generally, the notice regarding sanctions must specify the authority for the sanction, as well as the sanctionable conduct. *See Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 92 (2nd Cir.1999); *Caldwell v. Farris (In re Rainbow Magazine, Inc.)*, 136 B.R. 545, 549 (9th Cir. BAP 1992), *rev'd in part sub nom., Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278 (9th Cir.1996) (motion for order assessing sanctions under Rule 9011 and § 105).

Appellants first argue that the OSCs failed to describe the filing of bankruptcy petitions as sanctionable conduct. This argument is not persuasive. The filing of a bankruptcy petition is a condition precedent for proper removal of an action to bankruptcy court. The removal statute, 28 U.S.C. § 1452(a), expressly refers to the bankruptcy court's subject matter jurisdiction under 28 U.S.C. § 1334, and also refers to removal to the "district where such civil action is pending." Therefore, proper removal must always, initially, involve the establishment of jurisdiction through the filing of a petition, and those acts are intertwined.

Appellants also contend that they had a right to file the bankruptcy petitions, but this argument misses the point. The first OSC stated: "[T]here does not appear to be a good faith purpose for the removal since Mr. DeVille's filing resulted in an automatic stay ... that protected him." The second OSC, directed at both Smith and Miller, discussed Miller's involvement in the same "conspiracy." The OSCs clearly described a complicity in the bank-

ruptcy filings and the immediate removal petitions, as part of a scheme to harass, delay and increase Cardinale's litigation costs. Thus, the right of any party to seek bankruptcy protection was not at issue, but rather the lack of good faith and wrongful purpose for such filings.

Appellants also maintain that the notice was deficient because the bankruptcy court cited only Rule 9011 as the authority for possible sanctions, but did not specifically state that it was also considering exercising its inherent authority.

The court issued two orders to show cause that served the purpose of giving due process notice to appellants of the potential for sanctions. While the first notice (July 21, 2000) invoked only Bankruptcy Rule 9011, the second notice (August 29, 2000) apprised appellants that the court was considering finding that "Mr. Smith and Mr. Miller have engaged in a conspiracy to hinder, delay and frustrate plaintiff's efforts" and that it was considering issuing "appropriate sanctions against both of them in addition to the sanctions already being considered against Mr. Smith."

The words "bad faith" need not appear in the notice if the court's findings (or proposed findings) show that the actions were taken for an "improper purpose." *See Eisenman v. Peoro (In re Peoro)*, 793 F.2d 1048, 1051 (9th Cir.1986). *See also Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1225 (3rd Cir.1995) (affirming inherent sanctions because the sanctioned party "was provided with sufficient, advance notice of exactly which conduct was alleged to be sanctionable and, furthermore, ... [the party] was aware that it stood accused of having acted in bad faith.").

Here, the OSCs described how Appellants conspired in unreasonably multiplying the proceedings, both in state court and bankruptcy court, by filing serial bankruptcy petitions and removal papers in violation of prior court orders. They also specifically addressed lack of good faith and Appellants' manipulation of the bankruptcy system to frustrate the state court trial. Appellants were also given the opportunity to respond in writing, and to appear and testify at a hearing.

This notice satisfied due process, and placed Appellants on notice that the court's inherent authority was implicated. Such notice enabled Appellants to prepare to defend against the assertion of conspiracy to abuse the judicial and bankruptcy process.

### C. Penalty in Excess of Attorneys' Fees and Costs

The court imposed an award of $23,597.00 in excess of what it determined to be Cardinale's reasonable compensation. Appellants maintain that this was a penalty in the nature of criminal contempt, and without the protections afforded by the Federal Rules of Criminal Procedure, including a jury trial. *See United States v. Rylander*, 714 F.2d 996, 1004 (9th Cir. 1983). *See also Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 130–31 (2nd Cir.1998) (holding that "a sufficiently substantial punitive sanction requires that the person sanctioned receive the procedural protections appropriate to a criminal case.").

 It is apparent from *Chambers* that "inherent authority" will not suffice to support such a "penalty" in this instance. The award in *Chambers* was purely compensatory. The context of the *Chambers* rationale is that "inherent power" is not a manifestation of contempt power and may be determined without resort to contempt proceedings so long as the sanctions are compensatory. *Id.*, 501 U.S. at 42–51, 111 S.Ct. 2123. By implication, a penalty is not authorized as part of "inherent power"

sanctioning authority and, if imposed as part of the court's "inherent power," must be done by way of contempt proceedings.

In order to sustain the $23,597.00 award, therefore, the appropriate theory necessarily shifts back to Rule 9011, which the bankruptcy court explicitly invoked. A bankruptcy court is expressly authorized by rule to impose a "penalty" that is "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R.Bankr.P. 9011(c)(2). Nor must such Rule 9011(c)(2) "penalty" be awarded through contempt proceedings.

The court's explanation of its rationale for the "penalty" demonstrates that it was appropriately limited to that which was necessary to deter repetition of the offending conduct by Appellants and others similarly situated.

■■■ It is well established that a court may impose a sum that is appropriate for deterrence purposes, even if it exceeds the amount of the fees incurred by the opposing party. *Frantz v. U.S. Powerlifting Fed'n*, 836 F.2d 1063, 1066 (7th Cir.1987) (addressing appropriate sanctions under former Rule 11). A monetary penalty is an appropriate sanction, and such a penalty may be combined with other sanctions necessary to deter. Fed.R.Bankr.P. 9011(c)(2). *See also* 10 *Collier on Bankruptcy* ¶¶ 9011.02[2], 9011.09 (Lawrence P. King, et al. eds., 15th ed. rev.2002) (citing Federal Civil Rule 11, and quoting the Advisory Committee Note to the 1993 Amendments, which states: "[U]under unusual circumstances, particularly for (b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation."); *Schwartz v. Kujawa (In re Kujawa)*, 270 F.3d 578,

583–84 (8th Cir.2001) ("The cornerstone of imposing a monetary sanction ... should be the selection of an amount no greater than sufficient to deter future misconduct by the party.").

The additional sanction was not excessive, when viewed in relation to the costs to Cardinale and to the court for the needless litigation. In addition, the sanction was appropriate to deter Appellants' scheme to circumvent court orders, deprive the proper division on of the bankruptcy court of its jurisdiction, and abuse the bankruptcy process, all for the wrongful purpose of impeding a state court action and harassing a plaintiff.

Thus, the penalty was authorized, and was appropriate in amount. But for one blemish, the "penalty" would be eligible to be affirmed. The blemish is that the Rule 9011(c)(2) "penalty" must be paid "into court." Here, the penalty was ordered paid to Cardinale and thus cannot stand as a Rule 9011(c)(2) penalty.

Hence, although Appellants richly deserve the sanctions awarded against them for their bad faith course of conduct, we are obliged to reverse that portion of the sanctions that constituted a penalty, and remand it for the bankruptcy court's further consideration.

### CONCLUSION

The sanction of Cardinale's reasonable attorneys' fees and costs, in the amount of $19,919.34, was a proper exercise of the bankruptcy court's inherent authority, and complied with due process requirements. This sanction is **AFFIRMED.**

The additional $23,597.00 penalty, although authorized under Rule 9011(c)(2), was improperly awarded to Cardinale, rather than the court, and is therefore **REVERSED.** We **REMAND** this portion of the sanction award in order that the

bankruptcy court may decide if it will order this "penalty" to be paid into the court.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**