
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:
BCB CONTRACTING SERVICES, LLC,

          Debtor.

BAP No. AZ-21-1254-BSF

Bk. No. 2:19-bk-15555-DPC

BRIAN K. STANLEY,

          Appellant,

v.

ANTHONY H. MASON, Chapter 7
Trustee; PAYAM D. KHOSHBIN,

          Appellees.

**MEMORANDUM***

Appeal from the United States Bankruptcy Court
for the District of Arizona
Daniel P. Collins, Bankruptcy Judge, Presiding

Before: BRAND, SPRAKER, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Appellant Brian K. Stanley appeals an order sanctioning him under

Rule 9011[1] and § 105(a).[2] Stanley was the attorney for the debtor, BCB

---

    * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

    [1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

    [2] Although the bankruptcy court said it was sanctioning Stanley under § 105(a), it appears to have relied on its inherent power to do so. We discuss that issue more below.

1

Contracting Services, LLC ("Debtor"). The bankruptcy court found that the chapter 7 petition Stanley filed on behalf of Debtor was frivolous and filed for an improper purpose and that Stanley engaged in bad faith conduct during the case. The court sanctioned Stanley $15,523.31, the amount of attorney's fees and costs incurred by the chapter 7 trustee that were previously awarded by the court but remained outstanding due to lack of estate funds. We AFFIRM on the basis that sanctioning Stanley was a proper exercise of the bankruptcy court's inherent authority.

## FACTS

**A.  Prepetition events**

Debtor was organized as an Arizona limited liability company in 2012 for the purpose of excavating, grading, and oil surface contracting. Barbara Holbrook was a member of Debtor, as reflected in the Arizona Corporation Commission ("ACC") records. Creditor Payam Khoshbin became a member of Debtor in 2014. After Khoshbin's withdrawal in 2016, Holbrook became the sole member and manager of Debtor and remained so thereafter.

In 2017, Debtor, represented by Stanley, filed a complaint in state court against Khoshbin alleging claims for conversion, interference with contract relations, and an accounting. Khoshbin asserted a counterclaim for an accounting alleging, among other things, that Debtor's members used bank accounts unknown to him to hide Debtor's revenues.

In June 2018, while the Khoshbin litigation was pending, Stanley assisted Holbrook in creating a successor company known as BCB Excavating

2

Services LLC ("BCB Excavating") through which Holbrook (and her husband) could continue the same business as they did through Debtor. Holbrook was the sole member and manager of BCB Excavating. BCB Excavating and Debtor shared the same mailing address, phone and fax numbers, and also shared the same email address until at least April 2019, when Stanley advised Holbrook to establish a new email address for BCB Excavating. Debtor's equipment was transferred to BCB Excavating for use in its business operations without providing anything of value to Debtor in exchange.

Several months into the Khoshbin litigation, Stanley advised Holbrook that Debtor should "walk away" from the lawsuit. He withdrew as Debtor's counsel and advised Holbrook to withdraw as the member of Debtor, which would be accomplished by filing with the ACC an Articles of Amendment to Debtor's Articles of Organization. In March 2019, the ACC rejected Holbrook's filing, stating: "Barbara Holbrook is the ONLY Member listed on the LLC. If you wish to remove this Member, You Must assign a New Member OR Manager to the LLC." Stanley doubted the correctness of the ACC's statement, but Holbrook opted not to pursue the matter. Accordingly, Holbrook proceeded as though she was still a member of Debtor.

Khoshbin obtained a judgment against Debtor for $167,367.47, plus attorney's fees. Khoshbin then served subpoenas on BCB Excavating and the Holbrooks seeking information about Debtor's assets and any transfers made to BCB Excavating. Stanley, representing BCB Excavating and the Holbrooks, filed objections to the subpoenas and moved to quash. The state court

3

overruled the objections, denied the motions to quash, and ordered BCB Excavating and the Holbrooks to comply with the Khoshbin subpoenas by December 12, 2019. On December 3, 2019, Stanley sent to Holbrook the following email:

> As you might have guessed, I'm asking because the state superior court judge ruled against us on the subpoenas. We could challenge his ruling by means of a special action (cost, $2 to 5K) and if we prevailed there Csontos [Khoshbin's counsel] would have to go back and pursue a more difficult path toward seeking information from you. Alternatively, we could just go ahead with putting BCB Contracting into Ch. 7 bankruptcy ($1,250 to start - and that should be about it unless Csontos/Khoshbin gets involved in the bankruptcy case and succeeds in getting the bankruptcy trustee to try to pursue you for money or property allegedly diverted from BCB Contracting).

Stanley sent Holbrook two additional emails expressing the urgency to put Debtor into bankruptcy to avoid compliance with the Khoshbin subpoenas. Holbrook agreed to proceed with the bankruptcy filing for Debtor.

**B.    Postpetition events**

On December 11, 2019, Debtor, represented by Stanley, filed a chapter 7 bankruptcy case. Debtor was insolvent and subject to at least two outstanding judgments totaling $275,866.74. Holbrook signed, as Debtor's sole member, the petition, schedules, statement of financial affairs ("SOFA"), and the amended SOFAs. The initial Schedule A/B reported Debtor's assets of $34,252.51 in cash and a 14-foot cargo trailer valued at $5,000.

Anthony Mason was appointed as the chapter 7 trustee ("Trustee") in

4

Debtor's case. His investigation revealed that not all of Debtor's equipment had been reported on the schedules and that certain transfers of funds from Debtor to BCB Excavating also went unreported. After Trustee's discovery, the schedules were amended to reflect Debtor's unreported equipment, which Trustee later sold for $3,750, but the SOFA was never amended to include the unreported transfers. Major discrepancies also existed between Debtor's reported gross revenues for 2018 and 2019 in the initial SOFA and the Holbrooks' federal tax returns for those years, but no amended SOFA ever cured those discrepancies.

Debtor, BCB Excavating, the Holbrooks, and Stanley also resisted Trustee's investigative efforts. Debtor failed to provide him with any requested information prior to the § 341(a) meeting of creditors. Trustee had to file motions to compel to obtain documents that were the subject of his Rule 2004 examinations, and Debtor failed to even appear at the examination. Even after Trustee prevailed on his motions to compel, BCB Excavating still failed to produce bank statements. He had to subpoena bank records to discover some of the undisclosed and unscheduled transfers from Debtor to BCB Excavating.

On May 26, 2020, Stanley moved to withdraw as counsel for Debtor. The bankruptcy court approved Stanley's withdrawal.

### 1. The special action and action against Trustee

Sometime in May 2020, Stanley and Holbrook discussed the ACC's earlier statement that her attempted withdrawal from Debtor as its last

member had been ineffectual. Stanley believed that if they could file a special action and get the ACC to change its position and make it retroactive to March 27, 2019, it would mean that Holbrook was not a member of Debtor when the bankruptcy petition was filed in December 2019. Consequently, because she had no authority to file it, Debtor's bankruptcy case would have to be dismissed. Holbrook agreed to have Stanley file the special action.

One week after his withdrawal as Debtor's bankruptcy attorney, Stanley, on behalf of Holbrook, filed the special action in state court. Ultimately, the ACC agreed that its earlier statement was erroneous and further agreed to correct the error and give effect to Holbrook's withdrawal from Debtor retroactively as of March 27, 2019.

Stanley did not inform Trustee of the special action. Upon discovering its existence, Trustee filed a notice of bankruptcy. Thereafter, Holbrook, represented by Stanley, sued Trustee in federal district court for declaratory relief to establish that she did not violate the automatic stay when she filed the special action. When Trustee's requests to Stanley to voluntarily dismiss the action failed, he moved to dismiss it. The district court granted Trustee's dismissal motion, finding that the action was barred by *Barton v. Barbour*, 104 U.S. 126 (1881). Trustee then sought sanctions in the bankruptcy court against Stanley[3] for attorney's fees and costs, which the court granted. It found that the action against Trustee was frivolous, filed for an improper purpose, and

---

[3] By this time, Trustee had settled with Holbrook, which we discuss more below.

filed in bad faith. The district court affirmed the bankruptcy court's sanctions order.

### 2. Motions to dismiss Debtor's chapter 7 case

Meanwhile, and now armed with the ACC's changed position as to Holbrook's withdrawal from Debtor, Stanley filed on behalf of BCB Excavating and the Holbrooks a motion to dismiss Debtor's bankruptcy case. They argued that the case had to be dismissed for lack of personal jurisdiction because Holbrook lacked authority to file it due to her retroactive removal as a member of Debtor.

Trustee agreed that dismissal was appropriate but for different reasons. Besides the misrepresentations and omissions made in Debtor's schedules and SOFAs and the lack of cooperation during the case, Holbrook had stated under penalty of perjury in the petition and SOFAs that she was the sole member of Debtor. However, argued Trustee, she was asserting in the special action that she had resigned as a member nine months before the chapter 7 filing. Trustee argued that it was bad faith to assert that Holbrook was a member of Debtor when seeking refuge in the bankruptcy court, yet assert the opposite in the special action, which was filed for the sole purpose of getting Debtor's bankruptcy case dismissed. The first motion to dismiss was denied without prejudice.

Later, Stanley, on his own behalf, moved to dismiss Debtor's bankruptcy case. His motion was nearly identical to the first motion that he filed on behalf of BCB Excavating and the Holbrooks and was based upon the

7

same argument: that the bankruptcy court lacked personal jurisdiction over Debtor because Holbrook lacked authority on the petition date to file the case. The bankruptcy court denied the second motion to dismiss, finding that Stanley lacked standing; he was neither counsel for Debtor nor a creditor.

### 3. Trustee's motion for sanctions

Trustee then moved for sanctions against Stanley[4] under Rule 9011[5] and the court's "inherent authority under § 105(a)."[6] He argued that sanctions were warranted for many of the same reasons he articulated in response to the first motion to dismiss. Trustee argued that the petition was filed in bad faith because it was not filed to address Debtor's debts; rather, it was filed to avoid compliance with the Khoshbin subpoenas and to unnecessarily delay the ultimate enforcement of two judgments entered against Debtor. Trustee argued that Stanley further abused the bankruptcy process by filing the special action as a means to sabotage the bankruptcy case, create an improper exit strategy, and allow Holbrook to escape examination as Debtor's representative. Trustee requested compensatory sanctions of $15,523.31, plus an additional $50,000 as a deterrence. Khoshbin joined in Trustee's motion.

Stanley opposed the sanctions motion, disputing Trustee's allegation of bad faith. He argued that the filing of the first motion to dismiss was not bad

---

[4] Trustee initially sought sanctions against Debtor, BCB Excavating, the Holbrooks, and Stanley. Before the evidentiary hearing, Trustee settled with everyone except Stanley.

[5] Since we are affirming the bankruptcy court's decision to impose sanctions under its inherent authority, we do not discuss any further the arguments raised or the court's ruling with respect to sanctions under Rule 9011.

[6] Section 105(a) provides, in relevant part: "The court may issue any order, process,

8

faith; rather, it was due to a change in circumstances. After the ACC corrected its records retroactively to March 2019, argued Stanley, it was clear that Holbrook lacked authority to file Debtor's bankruptcy petition in December 2019 and, hence, that the bankruptcy court lacked personal jurisdiction. Stanley also argued that Debtor's chapter 7 case was a proper filing; there was nothing improper about an insolvent company invoking the automatic stay to stop collection efforts and letting a bankruptcy trustee liquidate the company and apply the net proceeds, if any, to the claims of its creditors.

At the evidentiary hearing, Stanley testified that he did not verify or ascertain the accuracy of what Holbrook reported in the bankruptcy papers she signed under penalty of perjury. Importantly, he did not ask for any tax returns or bank statements even though he knew Khoshbin's subpoena suggested that fraudulent transfers were made from Debtor to BCB Excavating. However, when Stanley asked Holbrook about any prepetition transfers before filing, Holbrook told him that no such transfers had been made. Stanley testified that when he saw Debtor's bank statements that were subpoenaed by Trustee, he became concerned that perhaps some fraudulent transfers had occurred and that the Holbrooks were potentially liable.

In response to the court's questions during opening argument, Stanley stated that he, as a debtor's attorney, would not have an obligation to run a credit report, to do a real property search to see if the debtor owned any

---

or judgment that is necessary or appropriate to carry out the provisions of this title."

9

properties, to do a UCC search for liens against any of the debtor's personal property, or to do a search for any pending litigation involving the debtor.

The bankruptcy court entered an order sanctioning Stanley and awarding Trustee his attorney's fees and costs of $15,523.31; it declined to award any of the requested $50,000. Focusing on its findings under § 105(a), the court found that Stanley acted in bad faith: (1) by initiating the chapter 7 case for the improper purpose of gaining a tactical advantage over Khoshbin in the Khoshbin litigation; (2) by his reckless misstatements of fact in the schedules and SOFAs; and (3) by his conduct throughout the proceeding.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(1) and (b)(2)(A). We have jurisdiction under 28 U.S.C. § 158(b).

## ISSUE

Did the bankruptcy court abuse its discretion in sanctioning Stanley under § 105(a)?

## STANDARDS OF REVIEW

We review an award of sanctions for an abuse of discretion. *Caldwell v. Unified Cap. Corp. (In re Rainbow Mag., Inc.)*, 77 F.3d 278, 283 (9th Cir. 1996) (reviewing sanctions imposed under Rule 9011 and the bankruptcy court's inherent power to sanction); *Shalaby v. Mansdorf (In re Nakhuda)*, 544 B.R. 886, 898 (9th Cir. BAP 2016), *aff'd*, 703 F. App'x 621 (9th Cir. 2017). A bankruptcy court abuses its discretion if it applies the wrong legal standard, or misapplies the correct legal standard, or if it makes factual findings that are

10

illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

"A finding of bad faith, prerequisite to assessment of attorneys' fees under the court's inherent power, will be overturned only if clearly erroneous." *Bader v. Itel Corp. (In re Itel Sec. Litig.)*, 791 F.2d 672, 674 (9th Cir. 1986) (cleaned up). A factual finding is clearly erroneous if it is illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

We may affirm on any ground supported by the record, regardless of whether the bankruptcy court relied upon, rejected, or even considered that ground. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).

## DISCUSSION

In addition to Rule 9011, bankruptcy courts have the power to sanction under (1) their statutory civil contempt authority under § 105(a), and (2) their inherent sanction authority. *See Law v. Siegel*, 571 U.S. 415, 420-21 (2014) (a bankruptcy court has statutory authority under § 105(a) to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Code, **and** it possesses inherent power to sanction abusive litigation practices); *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196 (9th Cir. 2003). In *Dyer*, the Ninth Circuit Court of Appeals discussed the important distinction between these two powers and emphasized that they are not interchangeable:

11

> Civil contempt authority allows a court to remedy a violation of a specific order (including 'automatic' orders, such as the automatic stay or discharge injunction). The inherent sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics.

322 F.3d at 1196 (citing *Fink v. Gomez*, 239 F.3d 989, 992-93 (9th Cir. 2001)).

The inherent power to sanction bad-faith conduct is broader than Rule 9011 sanctions and "extends to a full range of litigation abuses." *Miller v. Cardinale (In re Deville)*, 280 B.R. 483, 495 (9th Cir. BAP 2002), *aff'd sub nom. Miller v. Cardinale (In re DeVille)*, 361 F.3d 539 (9th Cir. 2004) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). A court may sanction under its inherent power even when the same conduct may also be punishable under another sanctioning statute or rule, such as Rule 9011. *Id.* (citing *Chambers*, 501 U.S. at 49).

Unlike civil contempt under § 105(a), to impose sanctions under its inherent authority, the bankruptcy court must find either bad faith, conduct tantamount to bad faith, or recklessness "with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 994. Counsel's goal to gain a tactical advantage in another case is sufficient to support a finding of bad faith and improper purpose. *Id.* at 992 (citing *In re Itel Sec. Litig.*, 791 F.2d at 675). Additionally, a court may sanction under its inherent authority a party who has engaged in bad-faith conduct over the course of a case. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1184-85 (2017).

Although the bankruptcy court stated that it was relying on § 105(a) to impose sanctions against Stanley, it is clear that the court applied its inherent power to sanction him. It made the explicit finding of bad faith, and the additional findings of frivolousness and recklessness with an improper purpose. Specifically, the court found that Stanley acted in bad faith by initiating the chapter 7 case for the improper purpose of gaining a tactical advantage over Khoshbin in the Khoshbin litigation – i.e., using Debtor's bankruptcy to avoid the Khoshbin subpoenas and to improperly delay the collection of judgments against Debtor, and using the automatic stay as a substitute for appealing the denial of the motions to quash. In addition, the court found that Stanley acted in bad faith by making reckless misstatements of fact in the schedules and SOFAs.

The court also found that Stanley acted in bad faith by his conduct throughout the proceeding. While it did not describe the conduct, the record reflects, and Trustee had argued, that Stanley engaged in abusive litigation tactics after the case was filed. Debtor (and Holbrook) got the benefit of the automatic stay to thwart Khoshbin's collection efforts yet failed to fulfill the debtor's duties imposed by the Code. Debtor, represented by Stanley, failed to provide Trustee with the necessary financial information for the § 341(a) meeting of creditors. Trustee also had to file motions to compel before documents that were the subject of his Rule 2004 examinations were produced. And when that failed with respect to bank records, Trustee had to subpoena them.

Immediately after his withdrawal as Debtor's bankruptcy attorney, Stanley filed the special action as a means to get Debtor's bankruptcy case dismissed after it became apparent that putting Debtor in chapter 7 was not such a great idea and certainly not in the best interest of his clients Holbrook and Debtor's successor company BCB Excavating. Stanley then, without seeking leave from the bankruptcy court, sued Trustee in federal district court over what he erroneously viewed as Trustee's improper involvement in the special action. When Stanley refused to voluntarily dismiss what Trustee warned was a frivolous lawsuit against him, Trustee had to file a motion to dismiss. The district court dismissed the action as barred by *Barton*. Stanley was later sanctioned by the bankruptcy court for the frivolous filing, which the district court affirmed. Stanley also filed the meritless second motion to dismiss Debtor's chapter 7 case, which he clearly lacked standing to file.

Stanley argues that the bankruptcy court did not impose sanctions under its inherent authority or § 105(a); rather, it foreshadowed the conditional sanctioning of him based on what an appellate court might do later. While the court's ruling is oddly worded, it appears to us that it did in fact, in the alternative, impose sanctions against Stanley under its inherent authority although it erroneously cited § 105(a). Despite its citation to § 105(a), the court applied the correct law and made the appropriate findings, including a finding of bad faith, for imposing inherent authority sanctions.

Stanley argues that a "bad faith" finding under the court's inherent authority requires conduct amounting to fraud or akin to it. That is simply

not the law, and he fails to cite any authority so holding. Stanley also argues that the bankruptcy court erred by relying on § 105(a) for its decision, asserting that the court could only impose sanctions under § 105(a) if he violated some other provision of the Code. As we have concluded that the bankruptcy court sanctioned Stanley under its inherent authority, we need not address this issue.

Lastly, Stanley argues that there was no basis for the bankruptcy court to sanction him under its inherent authority because it could do so adequately under Rule 9011. Although the Supreme Court in *Chambers* warned that a court must "exercise caution" when invoking its inherent power and "ordinarily should rely on the Rules" when sanctioning, it also added that if "neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." 501 U.S. at 50. The bankruptcy court found that Stanley engaged in bad faith conduct throughout the proceeding. Since much of that conduct did not consist of a writing filed with the court, and Rule 9011 does not reach such conduct, the court's reliance on its inherent power was appropriate.

Once a finding of bad faith has been made, a court may award attorney's fees and costs as a sanction to compensate the prevailing party for expenses incurred by his or her opponent's bad faith litigation tactics. *Chambers*, 501 U.S. at 45-46; *Fink*, 239 F.3d at 991. The bankruptcy court sanctioned Stanley $15,523.31, the amount of attorney's fees previously awarded to Trustee but remaining unpaid by the estate due to lack of funds.

These fees were apparently incurred due to the bad faith filing and had already been reviewed for reasonableness when awarded. Stanley has not argued that the amount of sanctions was improper, so we have no reason to question it.

While the bankruptcy court erroneously relied on § 105(a) to sanction Stanley under its inherent authority, such error was harmless. The record supports its decision to sanction Stanley under its inherent authority, which is not dependent upon § 105(a). Accordingly, we conclude that the bankruptcy court did not abuse its discretion in sanctioning Stanley and awarding Trustee his attorney's fees and costs of $15,523.31.

## CONCLUSION

For the reasons stated above, we AFFIRM.