David M. FINK, Petitioner–Appellant,

v.

James H. GOMEZ, Director, Respondent–Appellee,

Diana Carloni Nourse, Appellee.

No. 99–56139.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 13, 2000

Filed Feb. 8, 2001

Stephen G. Perry, Woodland Hills, California, for appellant David M. Fink.

David T. Dibiase (argued), Anderson, McPharlin & Conners LLP, Los Angeles, California; Richard R. Clouse and E. Sean Archer, Cihigoyenetche, Grossberg & Clouse, Ontario, California, for appellee Diana Carloni Nourse.

Before: CANBY, McKEOWN, and PAEZ, Circuit Judges.

McKEOWN, Circuit Judge:

We must decide whether, as a matter of law, a district court has authority under its inherent power to impose sanctions when an attorney has made reckless misstatements of law and fact, and has done so for an improper purpose. We conclude that it does have the authority and thus reverse and remand so that the district court may exercise its discretion to determine whether sanctions are appropriate.

## BACKGROUND

This appeal involves the intersection of two different actions brought by David M. Fink. Both cases stem from a 1993 altercation between Fink and several guards at the California Institute for Men, where Fink was serving a sentence for commercial burglary. The altercation left Fink permanently and severely disabled.

Fink filed the first action, *Fink v. Ylst,* No. CV 94–590 JSL (C.D.Cal.), in 1994 against a number of the prison guards for violation of his civil rights. The action before us is Fink's petition for habeas corpus, filed in 1996. Fink contends that the disciplinary proceeding that followed the 1993 altercation violated his constitutional rights, and he seeks restoration of good behavior credits and other adjustments in his status in California Department of Corrections inmate records.

In June 1998, the district court conditionally granted the petition, finding that the state's failure to allow Fink to appear or present witnesses violated his due process rights. The conditional judgment required the State to restore Fink's good conduct credits unless the State held a new disciplinary hearing within 60 days. The State did not conduct a hearing within 60 days, and the writ therefore became unconditional.

Some months after entry of the conditional judgment, in September 1998, the court held an off-the-record telephonic conference, which included Fink (who was pro se), the state's counsel in the habeas case, and an attorney representing the defendants in the *Ylst* § 1983 case ("*Ylst* counsel"). Apparently, *Ylst* counsel participated in the call to monitor the habeas case and to protect her clients' interests in the *Ylst* case; she was never counsel of record for any party in the habeas case. During the conference call, *Ylst* counsel told the district court that California law required the prison to hold a disciplinary hearing concerning the 1993 altercation, although the conditional judgment precluded a new disciplinary hearing. In the interest of federal/state comity, and on the basis of the representations of *Ylst* counsel, the district court declined specifically to enjoin a hearing, but stressed that no hearing should have any adverse consequences for Fink.

Four days later, the state proceeded to hold a new disciplinary hearing. Fink did not appear and no witnesses testified on his behalf. At the conclusion of the hearing, the hearing officer found that Fink had committed a disciplinary infraction, his good conduct credits were not fully restored despite the district court's ruling, and his status was adjusted so that, if he were ever to return to prison, he could be placed in a segregated housing unit. In other words, the hearing resulted in adverse consequences for Fink.

The parties, plus *Ylst* counsel, were back in court two months later. At a hearing in November 1998, *Ylst* counsel represented to the district court that the matter of the 1993 altercation had been referred to the district attorney for prosecution, that the

district court's denial of the petition for writ of habeas corpus "wasn't exactly reversed," that the September 1998 disciplinary hearing was evidentiary only, and that the hearing resulted in no change in Fink's inmate status for any purpose.

Prompted by the various misrepresentations by *Ylst* counsel, in January 1999, the district court sua sponte issued an order to show cause why *Ylst* counsel should not be sanctioned. The district court described a series of statements that it believed justified sanctions—in particular, *Ylst* counsel's statements that California law required the disciplinary hearing, and that the hearing would not and did not have adverse consequences for Fink. The district court specifically found that "[a]ll claims by *Ylst* Counsel and respondent that the [state] was *required* to hold the 1998 Disciplinary Hearing [were] meritless," and that the hearing had adverse consequences for Fink. In addition, the court noted that "[i]nformation obtained by the court since the 1998 Disciplinary Hearing, including admissions by *Ylst* Counsel, has led the court to the inevitable conclusion that the 1998 Disciplinary Hearing was orchestrated by *Ylst* Counsel for the purpose of gaining tactical advantage in the *Ylst* case." These findings and others led the court to find that "*Ylst* Counsel has attempted repeatedly to mislead the court by making misrepresentations regarding the state of the record, the orders of the court, and the actions taken by respondent and the CDC.... It appears that the entire 1998 Disciplinary Hearing, and the events that followed, have been orchestrated by *Ylst* counsel in bad faith with a view to gaining an advantage in the *Ylst* case."

In March 1999, the district court issued an order finding that *Ylst* counsel failed to show cause why she should not be sanctioned, but declining to sanction her under the court's inherent power because, although "she acted with reckless disregard for the truth, which rose to the level of objective bad faith," the district court could not "determine whether [*Ylst* counsel] acted in subjective bad faith." *Fink v. Gomez*, 39 F.Supp.2d 1225, 1226 (C.D.Cal.

1999). The judge mused that, although some opinions of this court indicate that only "subjective bad faith" is sanctionable, others imply that "recklessness" or "objective bad faith" will suffice. *Id.* The lack of certainty in the case law, and the "tenor" of circuit court opinions reversing the imposition of sanctions, led the district court to decide not to impose sanctions. *Id.* at 1226–27.

The district court denied Fink's motion for reconsideration, and this timely appeal followed. Fink contends that the district court abused its discretion by declining to impose sanctions after finding that *Ylst* counsel had acted in a reckless manner rising to the level of bad faith.

## ANALYSIS

### I. Sanctions Under the Court's Inherent Power

Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power. This case involves sanctions under the third source of authority.

The Supreme Court in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), delivered the definitive summary of the bases on which a federal court may levy sanctions under its inherent power. The Court reiterated the federal courts' inherent power to levy sanctions, including attorneys' fees, for "willful disobedience of a court order ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." *Id.* at 766, 100 S.Ct. 2455 (internal quotation marks and citations omitted). The *Roadway* Court also noted that a court "certainly may assess [sanctions] against counsel who willfully abuse judicial processes." *Id.* The Court

reaffirmed the *Roadway* principles in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), emphasizing the continuing need for resort to the court's inherent power, because it is "both broader and narrower than other means of imposing sanctions." *Id.* at 46, 111 S.Ct. 2123. On the one hand, the inherent power "extends to a full range of litigation abuses." On the other, the litigant must have "engaged in bad faith or willful disobedience of a court's order." *Id.* at 46–47, 111 S.Ct. 2123. In *Chambers*, the Court left no question that a court may levy fee-based sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose. *Id.* at 45–46 & n. 10, 111 S.Ct. 2123.

It appears that the Court in *Roadway* and *Chambers* used the term "bad faith" to mean two different things. The Court sometimes used "bad faith" to mean a single category of sanctionable conduct, and sometimes as a shorthand term for all sanctionable conduct under a court's inherent power. For example, *Chambers* used "bad faith" as a shorthand term to encompass a broad range of conduct in observing that a party may "show[ ] bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order," 501 U.S. at 46, 111 S.Ct. 2123. On the other hand, *Roadway* treated bad faith as being distinct from delay, disruption, and disobeying a court order. *See Roadway*, 447 U.S. at 766–67 & n. 13, 100 S.Ct. 2455 (addressing only "bad faith" conduct after setting out the five bases for inherent power sanctions—disobedience, bad faith, and vexatious, wanton, or oppressive actions).

■ Under both *Roadway* and *Chambers*, then, the district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct. For example, in *In re Itel Securities Litigation*, 791 F.2d 672 (9th Cir.1986), counsel filed objections to exact fee concessions in an action pending before another court. The objections were not frivolous, nor were they submitted with any knowledge that they were meritless. But counsel's goal was to gain an advantage in the other case, which we concluded was "sufficient to support a finding of bad faith." *Id.* at 675. "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees.' " *Id.* (quoting *Lipsig v. National Student Mktg. Corp.*, 663 F.2d 178, 182 (D.C.Cir.1980) (per curiam)).

*Itel* teaches that sanctions are justified when a party acts *for an improper purpose*—even if the act consists of making a truthful statement or a non-frivolous argument or objection. In *Itel*, the improper purpose was the attempt to gain tactical advantage in another case. 791 F.2d at 675 (discussing improper motivation). This approach is in harmony with *Roadway*, where the Supreme Court made clear that courts possess inherent power to impose sanctions for "willful abuse of judicial processes." 447 U.S. at 766, 100 S.Ct. 2455.

■ In reviewing sanctions under the court's inherent power, our cases have consistently focused on bad faith. For example, in *United States v. Stoneberger*, 805 F.2d 1391 (9th Cir.1986), the district court imposed sanctions on a chronically late attorney. Reversing the imposition of sanctions, we held that mere tardiness does not demonstrate the improper purpose or intent required for inherent power sanctions. *Id.* at 1393. Rather, "[a] specific finding of bad faith ... must 'precede any sanction under the court's inherent powers.' " *Id.* (quoting *Roadway*, 447 U.S. at 767, 100 S.Ct. 2455).

We again reversed sanctions due to a lack of intent in *Zambrano v. City of Tustin*, 885 F.2d 1473 (9th Cir.1989). In that case, the plaintiff's counsel negligently

failed to comply with local court rules that required admission to the district court bar. We vacated the sanctions, holding that the district court may not sanction mere "inadvertent" conduct. *Id.* at 1485; *see also id.* at 1483 ("Nothing in the record indicates that their failure to request admission to the district bar was anything more than an oversight or ordinary negligence on their part."); *id.* at 1484 ("Willful or reckless disregard of court rules justifies punitive action."). Similarly, in *Yagman v. Republic Ins.,* 987 F.2d 622, 628 (9th Cir.1993), we vacated the imposition of sanctions where there was no evidence that the attorney had "acted in bad faith or intended to mislead the court."

The district court here voiced a concern that there was a conflict in the law of the Circuit with respect to standards for sanctions under the court's inherent power. Notably, the district court cited our recent decision in *In re Keegan Mgmt. Co.,* 78 F.3d 431 (9th Cir.1996) as requiring a specific finding of bad faith conduct or conduct "tantamount" to bad faith. The district court then cited *Barber v. Miller,* 146 F.3d 707, 711 (9th Cir.1998), as requiring a finding of recklessness *or* bad faith. Although some confusion is understandable, any perceived inconsistency is readily resolved by a review of the cases.

In *Keegan,* after addressing sanctions under Rule 11 and § 1927, we reviewed the district court's use of its inherent power to award sanctions against attorneys and their law firms for initiating a securities lawsuit. The district court found that the law firms had acted recklessly. We affirmed that "[o]ur precedents plainly require more." Quoting *Roadway,* we stated that counsel's conduct must constitute or be tantamount to bad faith. Moreover, the district court had to make a specific finding to that effect. 78 F.3d at 436. Not only did the district court fail to make the specific finding, but we found no support in the record as a whole for a finding of bad faith, and reversed the court's order.

In *Barber v. Miller,* 146 F.3d 707 (9th Cir.1998), we also reviewed the imposition of sanctions under the three sources of authority, focusing principally on Rule 11. We reversed the sanctions award because the requesting party failed to follow the requirements of Rule 11. We then reviewed the propriety of the award under § 1927 and the court's inherent authority, holding that "[a]n award of sanctions under 28 U.S.C. § 1927 or the district court's inherent authority requires a finding of recklessness or bad faith." *Id.* at 711. As both § 1927 and the court's inherent power were discussed together in the same sentence, the court's analysis was not clearly delineated. The cases cited (*Keegan* and *Chambers*), as well as the structure of the sentence, resolve any possible ambiguity. That is, recklessness suffices for § 1927, but bad faith is required for sanctions under the court's inherent power. In *Barber,* we found no more than ignorance or negligence, which would not meet the appropriate standard of *either* basis for sanctions. As such, no conflict exists in the standards set out in *Keegan* and *Barber.*

In sum, *Barber* holds that bad faith is required for inherent power sanctions. And *Keegan* reiterates that sanctions are permissible when an attorney has acted recklessly if there is something more—such as an improper purpose. Our latest application of *Keegan* confirms such a reading. *See, e.g., Primus Auto. Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 648 (9th Cir.1997) ("a finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent' ") (quoting *Keegan,* 78 F.3d at 436).

 In the present case, the district court read our precedent, especially *Keegan,* to bar the imposition of sanctions for an attorney's reckless misstatements of law and fact; the court decided that it could not impose sanctions without "subjective bad faith." The district court was correct that mere recklessness, without more, does not justify sanctions under a

**994**

court's inherent power. But the cases discussed above make clear that sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith. Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose. Therefore, we hold that an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power. We take no position on whether these conditions are present in this case or whether sanctions should be imposed, a determination that rests in the sound discretion of the district court. Because the district court misapprehended the scope of its inherent authority, it abused its discretion, and thus we remand for further consideration of the sanctions issue. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.").

## II. Failure to Impose Sanctions Under Rule 11 or § 1927

■ Fink argues that the district court erred in basing its decision on inherent authority and declining to consider sanctions available under Rule 11 or 28 U.S.C. § 1927. It is well settled, however, that the district court may, in its informed discretion, rely on inherent power rather than the federal rules or § 1927. *See Chambers*, 501 U.S. at 50, 111 S.Ct. 2123.

REVERSED and REMANDED for further proceedings consistent with this opinion.