**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-16-1376-KuLTa |
| ) | |
| RUBYE E. TAYLOR, ) | Bk. No.   2:14-bk-31128-NB |
| ) | |
| Debtor. ) | Adv. No.  2:15-ap-01183-NB |
| _____ ) | |
| RUBYE E. TAYLOR; ANDRE ) | |
| DEL MONTE FREEMAN; MATTHEW D. ) | |
| RESNIK, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| JAMES B. NUTTER & COMPANY; ) | |
| JAMES B. NUTTER; FEDERAL ) | |
| NATIONAL MORTGAGE ASSOCIATION,) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on June 22, 2017
at Pasadena, California

Filed – August 9, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Neil W. Bason, Bankruptcy Judge, Presiding

Appearances:    M. Jonathan Hayes of Simon Resnik Hayes LLP argued
for appellants; Whitney Heafner of Alston & Bird
LLP argued for appellees.

Before: KURTZ, LAFFERTY and TAYLOR, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

This appeal concerns an adversary proceeding challenging the foreclosure of a residence in Los Angeles, California formerly owned by decedent, Lawrence Taylor. The two plaintiffs are chapter 13[1] debtor Rubye E. Taylor – the decedent's longtime companion and cohabitant – and Andre Del Monte Freeman – Rubye Taylor's son. Both claim to have held a pre-foreclosure interest in the residence. Matthew D. Resnik was the attorney for the plaintiffs in the adversary proceeding.

A couple of weeks after the defendants filed a motion to dismiss and a request for sanctions, the plaintiffs voluntarily dismissed their adversary proceeding. The bankruptcy court then heard and determined the sanctions request of the defendants, James B. Nutter & Company, James B. Nutter and the Federal National Mortgage Association. The bankruptcy court ultimately awarded, as inherent power sanctions, virtually all of the attorney fees the defendants incurred in preparing and filing a motion to dismiss and in seeking sanctions against the plaintiffs and their counsel. The total fees awarded to the defendants exceeded $150,000.

The first instance of alleged litigation misconduct – the plaintiffs' delay in requesting voluntary dismissal of their adversary proceeding – was not sanctionable under the court's

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "Local Rule" references are to the Local Rules of the United States Bankruptcy Court for the Central District of California.

inherent power. As a matter of law, plaintiffs' delay could not be sanctioned under the court's inherent power when there was no statute, Rule, Civil Rule, Local Rule, ethical rule or court order requiring more expeditious action.

Nor did the second instance of alleged litigation misconduct – plaintiffs' defense against the imposition of sanctions – justify inherent power sanctions. This aspect of the bankruptcy court's sanctions ruling was based almost entirely on the bankruptcy court's assessment of the efficacy and quality of the arguments the plaintiffs raised in their sanctions defense. As a matter of law, this was an insufficient ground (by itself) to impose inherent power sanctions.

Accordingly, we REVERSE.

**FACTS**

Plaintiffs commenced their adversary proceeding in April 2015 alleging fraud, forgery and civil conspiracy against Nutter and his company and seeking to invalidate the foreclosure sale and the underlying deed of trust with respect to all defendants.

According to the plaintiffs, in January 2015, they investigated the reverse mortgage transaction supposedly entered into by the decedent in September 2007 – at the age of 83 and a few years before his death. Based on this investigation, the plaintiffs allegedly determined that the reverse mortgage transaction "was fraudulent and fraught with forged documents" including the fraudulent misappropriation of the transaction proceeds. Rubye and Freeman further alleged that Nutter and his company diverted the reverse mortgage transaction proceeds to themselves or to some unknown third party with whom they were

3

acting in conspiracy. The Federal National Mortgage Association – or Fannie Mae – is identified in the complaint as the successor in interest under the deed of trust.[2]

In May 2015, before defendants responded to the complaint, counsel for the parties met and conferred and agreed that defendants would informally produce for plaintiffs' review transaction documentation with the expectation that, if the plaintiffs were satisfied that the documentation demonstrated the bona fides of the transaction, plaintiffs would voluntarily dismiss the adversary proceeding.

On July 1, 2015, at the offices of their counsel, defendants made available for the plaintiffs' review a large number of transaction documents. Resnik's colleague, David Kritzer, attended the document review on behalf of the plaintiffs.[3] As the bankruptcy court later noted, the documents presented for review included (among others):

(a) pre-loan disclosures and counseling certifications

[2]The complaint mentions in passing that, in 2004, decedent granted a joint tenancy interest in his residence to a Ms. Latanya Hill and that, in 2007, just before the reverse mortgage transaction allegedly was entered into, Hill relinquished her joint tenancy interest, and the decedent once again became the sole holder of legal title to the residence. The complaint does not mention it, but elsewhere in the record, Hill is identified as the decedent's daughter and "next of kin" and as being aware of or somehow involved in the reverse mortgage transaction. The extent of her awareness and involvement and her potential knowledge of what happened to the transaction proceeds apparently never was ascertained.

[3]While Resnik presumably was the most senior attorney representing plaintiffs, Resnik identified Kritzer as "lead counsel" for the plaintiffs in correspondence sent to defendants' counsel.

4

and acknowledgment by the Decedent, including that he had been advised to discuss the reverse mortgage with his family members and those upon whom he relied for financial advice; (b) notary certifications of the Decedent's signatures (including one in the Home); (c) photographs inside the Home; (d) photocopies of the Decedent's driver's license and Social Security card; (e) escrow records showing the disbursement to the Decedent in cash; (f) the Decedent's acknowledgment of receipt of the funds in cash; (g) post-closing correspondence including annual confirmations of the reverse mortgage; and (h) the Decedent's repeated representations that Ms. Hill was his next of kin.

Amd. Findings of Fact and Conclusions of Law (Oct. 13, 2016) at 9:14-23.

During the month of July 2015, defendants repeatedly inquired by email whether plaintiffs were prepared to dismiss the adversary proceeding. Kritzer variously responded on behalf of plaintiffs that their consideration and investigation was not yet complete, and he was having trouble contacting and getting a decision from his clients. Kritzer also asked follow-up questions regarding ownership of the escrow bank account, identified in the wire instructions, into which the lender apparently funded the transaction proceeds.

Also during July 2015, defendants more than once asserted that plaintiffs were prosecuting the action in bad faith as a delaying tactic, that the transaction documentation demonstrated the adversary proceeding was meritless and groundless, and that they would seek sanctions unless plaintiffs immediately agreed to dismiss the matter.

On or about August 11, 2015, Kritzer telephoned defendants and informed them that the plaintiffs were not prepared to dismiss the adversary proceeding because they still did not know what happened to the transaction proceeds. In an email dated

5

August 11, 2015, defendants confirmed plaintiffs' unwillingness to dismiss and pointed out that the defendants had no way of knowing what the decedent (or his daughter Hill) might have done with the transaction proceeds after the transaction was funded.

On August 14, 2015, the defendants filed their Civil Rule 12(b)(6) motion to dismiss, which included a request for sanctions. The accompanying notice of motion specifies that defendants were seeking to recover roughly $90,000 in attorney fees against both the plaintiffs and their counsel under 28 U.S.C. § 1927, Rule 9011(c)(1)(B), Local Rule 7054-1, and the court's inherent power. The notice of motion sums up the grounds for the sanctions request:

> Plaintiffs and their counsel have needlessly and improperly compounded the costs of this litigation. They have maintained this frivolous lawsuit in bad faith and for nothing other than the improper purposes of harassing Defendants and needlessly increasing the costs of litigation for Defendants.
>
> Defendants attempted in good faith to meet and confer with Plaintiffs' counsel on numerous occasions in the weeks and months leading up to this Motion in a lengthy and exceedingly costly effort to informally resolve this matter and persuade Plaintiffs to dismiss their meritless action, but to no avail.

Amd. Notice of Motion and Motion to Dismiss and Request for Sanctions (Aug. 17, 2015).

The motion to dismiss was not based on the bona fides of the reverse mortgage transaction. Instead, defendants asserted in the motion that the statute of limitations had run on the plaintiffs' claims and that the plaintiffs lacked standing. The bankruptcy court never ruled on the merits of these arguments and later concluded in its final ruling that these arguments did not support its sanctions ruling. In fact, the bankruptcy court

6

indicated that plaintiffs had stated colorable claims in spite of these arguments.

On September 1, 2015, roughly two weeks after the filing of the defendants' Civil Rule 12(b)(6) motion, plaintiffs filed a request for voluntary dismissal of the adversary proceeding under Civil Rule 41(a), which is made applicable in adversary proceedings by Rule 7041. The request also contained an opposition to the defendants' sanctions request. According to the plaintiffs, they finally decided on August 31, 2015 – just before their opposition to the motion to dismiss was due – that dismissal of the adversary proceeding was in their best interests. In the weeks leading up to their August 31, 2015 decision to dismiss, plaintiffs claim, they and their counsel were plagued with disagreement and indecision regarding whether the adversary proceeding should be dismissed.

Based on the plaintiffs' dismissal request, the bankruptcy court entered an order on September 3, 2015 dismissing the complaint but setting a status conference and preliminary hearing to address defendants' sanctions request. The bankruptcy court held status conferences in September and November, 2015, at which it opined that, in order to save the parties time and money, the parties should present all of their evidence and legal argument regarding the sanctions issue in written form. The bankruptcy court further opined that the court's inherent power was the only sanctions authority that might apply to permit the defendants to recover their attorney fees as sanctions. The bankruptcy court also directed the parties to mediate the sanctions dispute. Neither party objected to these procedures or the absence of an

7

evidentiary hearing. After the unsuccessful mediation, in November 2015, the bankruptcy court issued a scheduling order setting deadlines for the parties to submit to the court their papers on the sanctions issue. Once again, no one objected to the briefing schedule or the bankruptcy court's determination of the matter on the papers, and both parties duly submitted their declarations and documentary evidence in support of their respective positions.

The defendants included with their papers much of the transaction documentation they had presented to plaintiffs' counsel Kritzer on July 1, 2015, and reiterated their argument that the plaintiffs knew after Kritzer's review of the documents that the reverse mortgage transaction was legitimate and that the lender duly had funded the transaction. As defendants put it, plaintiffs then dragged their feet for six more weeks after the document review and ultimately refused to dismiss, thereby forcing defendants to incur the cost of preparing and filing the Civil Rule 12(b)(6) motion. Defendants further complained that plaintiffs lacked a valid basis from the outset for filing their complaint and that the complaint filing as well as many other actions of the plaintiffs and their accomplices were all part of a scheme to delay the plaintiffs' eviction from the residence and to increase defendants' litigation costs.

In their papers in opposition to the sanctions request, plaintiffs included, among other evidence, the declarations of Resnik and Kritzer, which for the most part told the same story as told by defendants regarding what they learned from the transaction documents and when they learned it.

Resnik and Kritzer asserted in their declarations, in effect, that their clients' request for voluntary dismissal on September 1, 2015 was the result of their clients' sudden realization, on August 31, 2015, that "they no longer had the stomach and resources to finance this proceeding and needed to dedicate their funds to moving expenses and locating a new residence" in light of their pending eviction.

After hearing oral argument on the matter on February 2, 2016, the bankruptcy court issued in May 2016 what it designated as proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1); the court at the time was uncertain whether the sanctions litigation was a core matter over which it had authority under 28 U.S.C. § 157(a) and (b) to enter a final decision.

According to the court, the defendants had not established by clear and convincing evidence, or even by a preponderance of evidence, that plaintiffs or their counsel had engaged in conduct sanctionable under the court's inherent power when they commenced the adversary proceeding.  The court similarly found a lack of evidence of conduct tantamount to bad faith in conjunction with plaintiffs' opposition to the defendants' motion to obtain relief from the automatic stay and in conjunction with the parties' mediation efforts.

On the other hand, the bankruptcy court found that, on and after July 28, 2015, plaintiffs and their counsel knew that they had no chance of prevailing in the litigation without a great deal of additional work, including substantial formal discovery, which might or might not have shown anything tending to support

9

their claims. The court further found that plaintiffs and their counsel knew from the transaction documents Kritzer reviewed on July 1, 2015, that the reverse mortgage transaction appeared on its face to have been properly documented and duly funded – by the lender wiring into escrow roughly $266,000 in transaction proceeds.

In other words, the bankruptcy court in essence found that, by the end of July 2015, the plaintiffs and their counsel knew that it would be all but impossible for them to build a case tying any of the defendants to an alleged scheme to fraudulently divest the decedent of his interest in his residence. Even though the plaintiffs and their counsel claimed that plaintiffs did not realize until one month later – August 31, 2015 – that they lacked the "stomach" and the finances to further pursue their adversary proceeding, the bankruptcy court effectively concluded that they already realized the adversary proceeding was a dead end by no later than July 28, 2015; consequently, the court found the plaintiffs and counsel "made a conscious decision to impose the subsequent costs of a motion to dismiss on the defendants, because they were unwilling to concede they could not prosecute their complaint (regardless whether that was due to lack of funds or lack of merit, or both)." Based on these subsidiary findings, the bankruptcy court ultimately found that, in purposefully imposing unnecessary litigation costs on defendants, plaintiffs and their counsel acted "in bad faith, vexatiously, wantonly or for oppressive reasons."

This by no means ended the sanctions litigation. The bankruptcy court's proposed findings and conclusions left open

10

certain issues regarding what portion of the fees defendants incurred were recoverable as inherent power sanctions. Among other things, the court indicated that it would need more detail regarding the fees incurred in order to arrive at the appropriate amount of fees. In addition, the plaintiffs filed a motion for reconsideration. The lingering issues concerning the appropriate amount of attorney fees to award, the plaintiffs' reconsideration motion, and the court's order for another round of mediation led to two more hearings and several more months' worth of supplemental briefing.

In October 2016, the bankruptcy court made minor revisions to its proposed findings and conclusions. The court also determined that it had core bankruptcy jurisdiction over the sanctions dispute, so it redesignated that document as its findings of fact and conclusions of law, and simultaneously entered a final judgment awarding the defendants roughly $150,000 in sanctions. The court also issued a separate memorandum decision explaining why it considered the $150,000 the appropriate amount of fees to award to defendants. In that decision, the court adopted the reasoning on fees stated in its tentative ruling for the August 2, 2016 sanctions hearing and also adopted as persuasive most of defendants' arguments explaining why they should be entitled to recover virtually all of their fees incurred prosecuting their sanctions request.

Roughly $78,000 of the sanctions amount was awarded against plaintiffs and Resnik for fees incurred between July 28, 2015 and May 3, 2016. Another $75,000 (roughly) was awarded only against Resnik for fees incurred between May 3, 2016 and the conclusion

11

of the sanctions litigation.[4]

The court's thinking regarding the appropriate sanctions amount evolved quite a bit over the course of the sanctions litigation. Initially, the court suggested that fees likely would be awarded only in a relatively small amount – perhaps limited to the amount incurred in preparing the Civil Rule 12(b)(6) motion. The court subsequently opined that defendants could not recover fees incurred in prosecuting their sanctions litigation against plaintiffs, citing <u>Orange Blossom Ltd. P'Ship v. Southern California Sunbelt Devs., Inc. (In re Southern California Sunbelt Devs., Inc.)</u>, 608 F.3d 456 (9th Cir. 2010). Ultimately, however, the court concluded that roughly $150,000 in fees – virtually all of the fees the defendants had requested – "flowed" from the plaintiffs' and (Resnik's) bad faith conduct. According to the court, this conduct included not only the plaintiffs' initial refusal (after July 28, 2015) to dismiss the adversary proceeding, but also the **entirety** of the plaintiffs' litigation of the sanctions issue:

> Suffice it to say that the Resnik firm's litigation regarding fees was itself brought "in bad faith, vexatiously, wantonly, or for oppressive reasons" (see adv. dkt. 107, Ex. A: tentative ruling, adopted as the actual ruling) and therefore the defendants are entitled to an award of their reasonable fees and expenses in litigating over fees.

Mem. Dec. (Oct. 13, 2016) at 2:20-23.

---

[4]In sanctioning Resnik specifically (and not any of the plaintiffs' other attorneys), the bankruptcy court relied on Resnik's concession made during the February 2, 2016 fees hearing that he – and he alone – was responsible for any misconduct by counsel for plaintiffs. Neither the plaintiffs nor Resnik have challenged on appeal this aspect of the court's ruling.

12

In turn, in its August 2, 2016 tentative ruling, on which its October 13, 2016 fee memorandum decision was based, the bankruptcy court specifically found that all papers filed and arguments made by Resnik and his firm after May 3, 2016, were made for the improper purpose of forcing defendants to incur additional unnecessary litigation costs. But there is nothing in the court's ruling specifically finding that any of plaintiffs' litigation activity prior to May 3, 2016 was undertaken for the improper purpose of increasing the defendants' litigation expenses.[5]

The plaintiffs and Resnik timely appealed the bankruptcy court's sanctions judgment on October 26, 2016.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157, and we have jurisdiction under 28 U.S.C. § 158.[6]

**ISSUE**

Did the bankruptcy court err when it sanctioned the plaintiffs and Resnik under its inherent power?

---

[5]Nor did the bankruptcy court's comments at the August 2, 2016 hearing add any clarity to this issue. Among other things, the bankruptcy court stated that some – but not all – of the plaintiffs' sanctions defense arguments were themselves sanctionable.

[6]Neither party has challenged the bankruptcy court's determination that it had authority under 28 U.S.C. § 157(a) and (b) to enter a final inherent power sanctions judgment based on conduct that took place in the bankruptcy court before dismissal of the plaintiffs' adversary proceeding, and afterwards, during the pendency of defendants' post-dismissal sanctions request. Additionally, both parties effectively have consented to the bankruptcy court's exercise of this authority. See Wellness Int'l Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1948–49 (2015).

13

**STANDARDS OF REVIEW**

The bankruptcy court's sanctions award generally is reviewed for an abuse of discretion. See B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1106 (9th Cir. 2002) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 55, (1991)). However, the bankruptcy court's predicate findings are reviewed under the clearly erroneous standard. Id.

The bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are clearly erroneous. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

**DISCUSSION**

**A. Inherent Power Sanctions – Generally**

Federal courts, including bankruptcy courts, have inherent power to impose sanctions for a broad range of willful or improper litigation conduct. Knupfer v. Lindblade (In re Dyer), 332 F.3d 1178, 1196 (9th Cir. 2003); Fink v. Gomez, 239 F.3d 989, 992-94 (9th Cir. 2001). Before imposing such sanctions, however, the court must explicitly find bad faith or conduct tantamount to bad faith. Fink, 239 F.3d at 993; Primus Auto. Fin. Servs. v. Batarse, 115 F.3d 644, 650 (9th Cir. 1997). Something more than mere negligence or recklessness is required. Rodriguez v. U.S., 542 F.3d 704, 709 (9th Cir. 2008) (citing Fink, 239 F.3d at 993-94). A finding that the litigant engaged in litigation for an improper purpose will suffice, even if the litigant advanced claims or objections that were colorable on their face. See id.; Fink, 239 F.3d at 992 (quoting In re Itel Sec. Litig., 791 F.2d

14

672, 675 (9th Cir. 1986)). For instance, when the litigant pursues litigation to harass the adverse party, or to increase its costs or to delay the resolution of other litigation, such motivations have been held to be improper for purposes of imposing inherent power sanctions. See Fink, 239 F.3d at 994; Primus Auto. Fin. Servs., 115 F.3d at 649.

One form of sanction the court may impose under its inherent power is an award of the opposing party's legal fees. Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017); Chambers, 501 U.S. at 45. These awards are a well-recognized exception to the "American rule" which generally requires each litigant to bear its own legal fees. Chambers, 501 U.S. at 45; Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975). Exceptions to the American rule are narrowly defined in order to ensure, among other things, that the exceptions do not swallow the entire rule. See Chambers, 501 U.S. at 45. Moreover, inherent power attorney fees awards should be imposed with caution and restraint because of the broad range of conduct potentially covered and because of the "potency" of the court's inherent power. See Snowden v. Check Into Cash of Wash. Inc. (In re Snowden), 769 F.3d 651, 660 (9th Cir. 2014) (citing Chambers, 501 U.S. at 44); see also Chambers, 501 U.S. at 50 ("A court must, of course, exercise caution in invoking its inherent power").

**B.    Appellants' Delay Is Not Sanctionable Under Bankruptcy Court's Inherent Power**

Among other things, plaintiff and Resnik argue on appeal that bad faith litigation conduct sanctionable under the

15

bankruptcy court's inherent power requires some "act" – something more than passive inactivity – to qualify as bad faith litigation conduct. As the plaintiffs and Resnik bluntly put it, the bankruptcy court assailed them for "doing nothing" when they were faced with the defendants' demands that they dismiss their complaint. In other words, the plaintiffs and Resnik maintain that their short-term delay of several weeks in requesting a voluntary dismissal of their adversary proceeding could not have constituted bad faith – or conduct tantamount to bad faith – when there was no statute, Rule, Civil Rule, Local Rule or ethical rule specifically requiring them to act sooner.

We consider this argument persuasive. Typically, litigation conduct sanctioned under the court's inherent power includes either affirmative actions or a combination of action and inaction (delay) as part of an ongoing scheme of improper litigation conduct. See, e.g., Chambers, 501 U.S. at 50-51 (litigant's entire course of conduct throughout the lawsuit); Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006) (litigant's intentional and knowing spoliation of evidence); Maui Police Dep't, 276 F.3d at 1106 (litigant's reckless and knowing violation of Fed. R. Evid. 412); In re Itel Sec. Litig., 791 F.2d 672, 675-76 (9th Cir. 1986) (litigant's filing of objections to settlement proposal to extract fee concessions in other litigation). Sometimes, a failure or refusal to act, by itself, can be sanctionable under the court's inherent power, but the only examples we found involved the litigants' failure to act in the face of a specific affirmative duty to act. See, e.g., Haeger v. Goodyear Tire & Rubber Co., 813 F.3d 1233, 1245 (9th

16

Cir. 2016), rev'd on other grounds, 137 S. Ct. 1178 (2017) (inherent power sanctions imposed based on litigants' failure to produce relevant documents despite their affirmative duty to do so under Civil Rules 26 and 34); Gomez v. Vernon, 255 F.3d 1118, 1134 (9th Cir. 2001) (inherent power sanctions imposed based on counsel's failure to remedy knowing violation of opposing party's attorney-client privilege).

Here, the bankruptcy court sanctioned the plaintiffs and Resnik solely based on their delay in dismissing the adversary proceeding. The bankruptcy court explicitly found that they delayed for the improper of purpose of increasing the defendants' litigation costs and in the hopes of hindering the defendants' efforts to complete their post-foreclosure eviction of Rubye and Freeman. Importantly, the delay was the only contemporaneous litigation conduct the bankruptcy court cited in support of its initial inherent power sanctions ruling.

We hold that an isolated incident of delay in taking action should not lead to inherent power sanctions, particularly when there is no statute, Rule, Civil Rule, Local Rule, ethical rule or court order requiring more expeditious action. Absent an affirmative duty to act quicker, the expectations on future litigants would be too unclear to reasonably enforce – when they can afford to bide their time before acting and when they are obliged to act immediately. The imposition, here, of inherent power sanctions was inconsistent with the principle, stated above, that inherent power sanctions only should be imposed with caution and restraint. In re Snowden, 769 F.3d at 660; Chambers, 501 U.S. at 50.

Referring to similar concerns, the Ninth Circuit Court of Appeals has held that a trial court should not have imposed inherent power sanctions against an attorney for an isolated failure to appear when "there is nothing in the local rules or norms of professional conduct 'which would have placed [the attorney] on reasonable notice' that his [failure to appear] was not in conformance with the court's requirements." Mendez v. Cty. of San Bernardino, 540 F.3d 1109, 1132 (9th Cir. 2008), partially overruled on other grounds by Arizona v. ASARCO LLC, 773 F.3d 1050 (9th Cir. 2014) (quoting In re Richardson, 793 F.2d 37, 40 (1st Cir. 1986)).

Even more so than the Ninth Circuit, the First Circuit Court of Appeals has been particularly active in this area, repeatedly reversing inherent power sanctions awards based on isolated incidents of inaction or delay when there was no affirmative duty to act (or act more quickly) imposed by Rule, Civil Rule, Local Rule, ethical rule or court order. See, e.g., United States v. Agosto-Vega, 731 F.3d 62, 65 (1st Cir. 2013) (reversing inherent power sanctions imposed for the filing of last-minute motions in limine); Boettcher v. Hartford Ins. Grp., 927 F.2d 23, 26 (1st Cir. 1991) (reversing inherent power sanctions imposed against a litigant and her attorney for last-minute settlement on day of trial after jury already had been empaneled); In re Richardson, 793 F.2d at 40-41 (reversing sanctions award because the trial court sanctioned attorneys for violating an unwritten rule requiring their appearance at a class certification hearing).

The Ninth Circuit in Mendez explicitly relied upon and approved of In re Richardson. In light of this reliance and

18

approval, we have no reason to doubt that the Ninth Circuit also would find persuasive Agosto-Vega and Boettcher.

Restricting the bankruptcy court's use of inherent power sanctions in this manner would not have left defendants without any recourse. Defendants clearly believed that Resnik and the plaintiffs violated Rule 9011 by, among other things, not doing adequate investigation before commencing their adversary proceeding and that, once Resnik and the plaintiffs had received evidence of the bona fides of the reverse mortgage transaction, they should have immediately dismissed the adversary proceeding. Even so, defendants chose not to initiate sanctions proceedings under Rule 9011(c)(1)(A) or to trigger that Rule's safe harbor provisions, which likely would have forced the plaintiffs and Resnik to withdraw their complaint within the 21-day safe harbor period provided for in the rule. Instead, the only part of Rule 9011 the defendants invoked was Rule 9011(c)(1)(B) – which permits the court to impose sanctions sua sponte and does not involve any sort of safe harbor period. See Shalaby v. Mansdorf (In re Nakhuda), 544 B.R. 886, 899 (9th Cir. BAP 2016). The bankruptcy court correctly determined that the monetary sanctions defendants were seeking could not be recovered under Rule 9011(c)(1)(B). See Miller v. Cardinale (In re Deville), 280 B.R. 483, 493-94 (9th Cir. BAP 2002), aff'd, 361 F.3d 539 (9th Cir. 2003). As a result, the defendants effectively boxed themselves into a position where they needed to persuade the bankruptcy court to fit the square peg of Resnik's and the plaintiffs' delay into the round hole of inherent power sanctions. While the defendants were successful in so persuading

19

the bankruptcy court, we are convinced that the above-referenced limitations on inherent power sanctions render them unsuitable to address the challenged litigation conduct at issue herein.

Therefore, we conclude that the bankruptcy court committed reversible error when it imposed inherent power sanctions against the plaintiffs and Resnik for not earlier filing their request for voluntary dismissal of their adversary proceeding.

**C.    Appellants' Sanctions Defense Is Not Sanctionable Under Bankruptcy Court's Inherent Power**

The bankruptcy court ruled that the entirety of Resnik's sanctions defense was independently sanctionable under the bankruptcy court's inherent power.  The court found that all of his efforts undertaken on and after May 3, 2016, were part of an improper scheme to force defendants to incur additional unnecessary attorney fees.  The court did not make a similar express finding for the period before May 3, 2016, but such a finding is implicit in the court's ultimate determination that the entirety of the plaintiffs' litigation of the sanctions issue "was itself brought in bad faith, vexatiously, wantonly, or for oppressive reasons."  Memorandum Decision Awarding Additional Attorney Fees (October 13, 2016) at 2:20-21 (citations and internal quotation marks omitted).

There are a number of considerations that undermine the bankruptcy court's conclusion that Resnik's sanctions defense was sanctionable under the bankruptcy court's inherent power.  As a threshold matter, we are troubled that a sanctions defense necessitated by the bankruptcy court's legally erroneous use of its inherent power ultimately lead to a large attorney fee award

20

against the adverse party. While the arguments Resnik focused on in his sanctions defense are not the ones leading us to reverse, his underlying position – that his and his client's conduct did not justify inherent power sanctions – was meritorious, as explained above.

In addition, Resnik's filings before May 3, 2016, were duly filed in December 2015 in accordance with the briefing schedule the bankruptcy court set, so that plaintiffs and Resnik would have an opportunity to tell their side of the story and explain their litigation conduct to the best of their ability, by way of declarations and exhibits. These filings primarily focused on why, in plaintiffs' view, plaintiffs' and Resnik's conduct was not sanctionable as a factual matter. They also challenged as unreasonable the defendants' request to recover $140,000 in attorney fees. Under these circumstances, we do not understand how the bankruptcy court could have determined that Resnik filed all of these papers solely for the purpose of increasing defendants' litigation expenses.

Similarly, many of the papers Resnik filed after May 3, 2016 were filed in accordance with and pursuant to the bankruptcy court's specific questions, concerns and directives regarding litigation of the sanctions issue. With the exception of Resnik's reconsideration motion papers, the bankruptcy court encouraged and/or ordered these filings – as well as a second round of mediation.

To permit blanket inherent power sanctions for the entirety of a sanctions defense on a procedural history like this would unduly interfere with (or chill) the litigants' right to respond

21

to allegations of sanctionable conduct. See generally Cole v. U.S. Dist. Court, 366 F.3d 813, 821 (9th Cir. 2004) (explaining importance of litigants' due process rights to notice and an opportunity to be heard before sanctions can be imposed).

The bankruptcy court arguably was justified in its assessment of the efficacy and quality of Resnik's sanctions litigation defense. As the bankruptcy court noted, Resnik's efforts in response to the court's questions, concerns and directives were lacking in a number of respects. Nonetheless, there is a critical disconnect between the litigants' lackluster litigation efforts and the bankruptcy court's conclusion that the filings the court directed Resnik to file were filed for an improper purpose. Something more than poor quality, invective and repetitive arguments is required before inherent power sanctions can or should be awarded. See Rodriguez, 542 F.3d at 709 (citing Fink, 239 F.3d at 993-94). A higher standard is essential to ensure that inherent power sanctions are imposed only with caution and restraint. See Chambers, 501 U.S. at 50; In re Snowden, 769 F.3d at 660.

To hold otherwise would not give enough weight to the dire consequences significant inherent power sanctions potentially can have on litigants and their counsel. As the Ninth Circuit has explained, "'[s]anctions not only may have a severe effect on the individual attorney sanctioned,' potentially damaging the attorney's career, reputation and livelihood, but they 'also may deter future parties from pursuing colorable claims.'" Mendez, 540 F.3d at 1133 (quoting Primus Auto. Fin. Servs., 115 F.3d at 650).

22

At bottom, the bankruptcy court's determination that Resnik's sanctions defense was sanctionable largely hinged on Resnik's repetition of his Rule 9011 arguments – repetition which occurred after the court, multiple times, told Resnik that Rule 9011 sanctions were not being considered. We understand that the bankruptcy court was very frustrated with Resnik based on his repeated attempts to present the same arguments for consideration. Yet there was nothing so egregious about them (or their repetition) that justified the court's imposition of inherent power sanctions.

Indeed, Resnik has contended that, by analogy, the standards applied to Rule 9011 sanctions issues should be applied to the court's imposition of inherent power sanctions. While we disagree with Resnik's contention, there is nothing that far-fetched, or frivoulous, in making it under the facts of this case. The contention is particularly apropos when, as here, the defendants persuaded the bankruptcy court to sanction litigation conduct under its inherent authority that more naturally fits the rubric for Rule 9011 sanctions. We are not saying that defendants were obliged to exhaust their Rule 9011 remedies first before seeking inherent power sanctions;[7] we are saying that their failure to avail themselves of Rule 9011 sanctions led the bankruptcy court to make a legally erroneous decision regarding the scope of inherent power sanctions and the applicability of

---

[7] See In re DeVille, 361 F.3d at 545 ("The Chambers Court was at pains to point out that the fact that certain statutes and rules of procedure authorize the imposition of sanctions does not foreclose a court's invocation of its inherent sanctioning authority when that appears to be the better instrument").

23

its inherent power to address the alleged litigation misconduct of the plaintiffs and Resnik.

In sum, the first instance of so-called litigation misconduct – the delay in requesting voluntary dismissal of the adversary proceeding – was not as a matter of law sanctionable under the bankruptcy court's inherent power. And the second instance of alleged litigation misconduct – Resnik's entire sanctions defense – did not justify inherent power sanctions either. Accordingly, we will REVERSE the bankruptcy court's sanctions judgment.

## CONCLUSION

For the reasons set forth above, the bankruptcy court's judgment awarding inherent power attorney fee sanctions to the defendants is REVERSED.