**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CRYSTAL CATHEDRAL MINISTRIES,<br>　　　　　　　　Debtor. | BAP No. CC-20-1103-FLT<br><br>Bk. No. 2:12-bk-15665-RK |
| DOUGLAS L. MAHAFFEY,<br>　　　　　　　Appellant,<br>v.<br>CAROL MILNER,<br>　　　　　　　　Appellee. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Robert N. Kwan, Bankruptcy Judge, Presiding

Before: FARIS, LAFFERTY, and TAYLOR, Bankruptcy Judges.

### INTRODUCTION

This appeal arises out of a dispute between chapter 11[1] debtor Crystal

Cathedral Ministries ("CCM") and appellee Carol Milner about the

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

contents of seven storage containers. Neither CCM nor Ms. Milner knows what is in those containers; there is no inventory of their contents, and no one has opened them for many years. But even though the parties literally do not know what they are fighting over, they have spent about a decade and hundreds of thousands of dollars warring over the unknown contents of the containers.

Specifically, this is an appeal from an order in which the bankruptcy court employed its inherent powers to impose approximately $70,000 of attorneys' fees as a sanction against CCM's attorney, appellant Douglas L. Mahaffey. We conclude that the bankruptcy court did not abuse its discretion in sanctioning Mr. Mahaffey for causing CCM to make reckless and frivolous arguments for the improper purpose of pressuring Ms. Milner to sign a release of claims. We AFFIRM.

**FACTS**

**A.    Prepetition events**

CCM is a Christian ministry founded in the 1970s by Dr. Robert Schuller and Arvella Schuller. It operated a church on a large campus in Orange County, California. Ms. Milner is Dr. Schuller's daughter and was involved in church operations.

In the 1990s, Ms. Milner wrote a play entitled "Glory of Creation" (the "Play"). She reached an agreement with CCM to stage the play on the CCM campus in summer 2005. The production was elaborate: it included video presentations on IMAX-sized screens, aerialists, and twenty-foot-tall

2

puppets. CCM allegedly spent millions of dollars to stage the Play and reportedly lost $13 million on the production. CCM thereafter decided to cease staging the Play, but Ms. Milner argued that this breached her agreement with CCM.

In July 2006, the parties entered into a settlement agreement ("Settlement Agreement") that divided the physical assets related to the Play between Ms. Milner and CCM. The Settlement Agreement included a nonexclusive list of the assets allocated to Ms. Milner (the "Play Property") and a preface that said that "CCM will keep all goods in [the] same condition as they were in at the end of the '05 season. CCM will not use [the] goods without prior, written approval of [Ms. Milner]." Ms. Milner claims that this provision obligates CCM to store her property in perpetuity at CCM's expense.

The Settlement Agreement also provided that Ms. Milner would hold all intellectual property rights in the Play, that CCM would defend and indemnify Ms. Milner against potential copyright infringement claims, and that CCM would pay Ms. Milner about $900,000 over a four-year period. Both parties agreed not to disparage each other.

At some point, CCM stored the Play Property in seven large trailers and parked them on leased property; the trailers have remained there for over a decade.

B.    **CCM's chapter 11 bankruptcy case**

On October 18, 2010, CCM filed a chapter 11 petition. It did not

schedule the Settlement Agreement as an executory contract. Nor did it mention the Settlement Agreement in its motion for an order authorizing rejection of executory contracts.

Ms. Milner filed four proofs of claim relating to a housing allowance, copyright infringement, and breach of an oral employment contract. None of her proofs of claim related to the storage of the Play Property pursuant to the Settlement Agreement. After an evidentiary hearing, the bankruptcy court allowed part of her housing allowance claim, Ms. Milner withdrew some of her claims, and the bankruptcy court disallowed the rest. The bankruptcy court also awarded CCM its attorneys' fees for litigating claims by Ms. Milner and other members of the Schuller family.

Meanwhile, the Official Committee of Unsecured Creditors ("Committee") filed a proposed plan that authorized liquidation of substantially all of CCM's real property assets. It also provided that "[a]ny contracts not designated for assumption or rejection at or before the Confirmation Hearing, shall be deemed rejected as of the Effective Date." It stated that, "upon the Effective Date, Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141."

After a plan confirmation hearing, the bankruptcy court issued its confirmation order that attached a list of executory contracts that were assumed and a list of executory contracts that were rejected. Neither list included the Settlement Agreement.

While the bankruptcy case was pending, CCM and Ms. Milner made some efforts to resolve the issues concerning the Play Property. It appears that Ms. Milner took possession of some but not all of the Play Property, the rest of the Play Property remained (or was placed) in the containers, and the discussions sputtered out.

On May 20, 2016, the bankruptcy court entered a final decree closing the case.

## C.  CCM's state court action against Ms. Milner

CCM grew weary of paying to store the Play Property in a storage yard. In 2017, CCM demanded that Ms. Milner take possession of the items and threatened to dispose of them. It represented that it cost thousands of dollars to lease the storage yard and would cost thousands of dollars more to remove and dispose of the property. Ms. Milner did not accede to this demand.

In November 2017, CCM, represented by Mr. Mahaffey, filed a complaint against Ms. Milner in California state court for declaratory and injunctive relief (the "State Court Action"). The complaint asserted that the Settlement Agreement was an executory contract that was rejected in the bankruptcy case, so CCM's relationship with Ms. Milner became one of gratuitous bailment that CCM could terminate at will. It stated that CCM chose to end that relationship, which "terminated CCM's duty to comply with the agreement and relieved it of any and all obligations to any future performance on the 2006 agreement to store" the Play Property. It also

5

sought injunctive relief compelling Ms. Milner to remove the Play Property from CCM's premises or allowing CCM to dispose of those items at Ms. Milner's expense.

Ms. Milner, who was represented by Harold J. Light, filed an answer and asserted twenty-one affirmative defenses. Among those defenses, she asserted that CCM's obligations under the Settlement Agreement were not extinguished at confirmation, CCM had an obligation to store and maintain the Play Property, CCM had failed to allow her reasonable access to the Play Property, and CCM had failed to redeliver the Play Property to her.

**D.    CCM's motion for contempt against Ms. Milner and her counsel**

After some unsuccessful efforts to resolve the matter, Mr. Mahaffey sent Mr. Light an e-mail asserting that Ms. Milner violated the discharge injunction by asserting affirmative defenses that claimed she had rights under the Settlement Agreement. Mr. Mahaffey's e-mail pressed Ms. Milner to sign a release of claims under the Settlement Agreement and "she can then come and retrieve the property." The e-mail concluded, "The permanent injunction terminated her ownership. Is she ready to sign a release? If not, I look forward to your opposition."

Mr. Light responded that the Settlement Agreement was not "rejected" during the bankruptcy case because it was not an executory contract; Ms. Milner had completed all of her obligations long before the bankruptcy proceedings. As such, she retained ownership rights to the Play Property and could defend herself in the State Court Action.

In June 2018, while the State Court Action was still pending, CCM, through Mr. Mahaffey, filed a motion for contempt ("Contempt Motion") in the bankruptcy court. CCM requested that the bankruptcy court issue an order to show cause why it should not hold Ms. Milner and Mr. Light in contempt for violation of the discharge injunction. It contended that Ms. Milner violated the discharge injunction by asserting affirmative defenses arising out of the allegedly rejected Settlement Agreement.

CCM took the position that the plan confirmation order "resulted in a discharge of the subject agreement between CCM and Milner which terminated CCM's duty, if any, to comply with the agreement." At that point, the discharge "relieved CCM of any and all obligations including, *inter alia*, any liability to further store any of Milner's play equipment, any liability related to that play equipment, and any duties to further protect it for the benefit of Milner."

CCM also argued that Ms. Milner waived any claims she had when she failed to file a proof of claim based on the storage of the Play Property.

Ms. Milner and Mr. Light opposed the Contempt Motion. They argued that the Settlement Agreement was not an executory contract because Ms. Milner had no material unperformed obligations under that agreement. They also argued that she did not need to file a proof of claim to assert ownership of the Play Property. They contended that they had a good faith belief that the discharge injunction did not apply to their actions. Further, they asserted that once CCM "returned to the fray" by filing the

7

State Court Action, Ms. Milner was entitled to defend herself.

Additionally, Ms. Milner and Mr. Light requested sanctions against Mr. Mahaffey under Rule 9011 for filing the Contempt Motion.

In its reply, CCM argued that Ms. Milner had waived her right to pursue personal property claims related to the Play Property because she had litigated other rights under the Settlement Agreement. It claimed that Ms. Milner knew that CCM disputed her ownership rights in the Play Property and that any duty it had to store the Play Property was discharged when Ms. Milner did not object or file a proof of claim. It argued that she knowingly waived her personal property claims. It also disputed her claim that she had a subjective good faith belief that the discharge injunction did not apply to her.

Finally, CCM argued that the Settlement Agreement was an executory contract because both parties had unperformed obligations.

Ms. Milner sent Mr. Mahaffey a letter requesting that CCM withdraw the Contempt Motion and its frivolous claims or she would seek Rule 9011 sanctions. But Ms. Milner did not contemporaneously serve an unfiled motion under Rule 9011. CCM did not withdraw the Contempt Motion.

At a status conference, CCM, represented by Mr. Mahaffey, raised a new set of arguments: that, under nonbankruptcy law, it had never effectively transferred the Play Property to Ms. Milner, and the Settlement Agreement was unenforceable.

The bankruptcy court set an evidentiary hearing as to whether the

8

Play Property had been transferred and whether the Settlement Agreement was an executory contract.

In its trial brief, CCM added more nonbankruptcy reasons why the Settlement Agreement was unenforceable: lack of consideration and unconscionability. It also advanced new reasons why the Settlement Agreement was an executory contract: Ms. Milner had not performed her obligation to resolve ownership of some of the Play Property, and CCM had an unperformed obligation to fund a trust to cover its payment obligations to Ms. Milner.

After an evidentiary hearing, the bankruptcy court issued its memorandum decision and order ("Contempt Order") denying the Contempt Motion because CCM had failed to prove that Ms. Milner had knowingly and willfully violated the discharge injunction. It held that the Settlement Agreement was not an executory contract because Ms. Milner did not have any material unperformed obligations. The court also held that the plan confirmation order had no claim preclusive effect on Ms. Milner's right to enforce the Settlement Agreement because the litigated proofs of claim had nothing to do with CCM's obligation to store the Play Property. Finally, it rejected CCM's arguments that the Settlement Agreement was unenforceable under nonbankruptcy law.

CCM appealed the Contempt Order to this Bankruptcy Appellate Panel but voluntarily dismissed the appeal. The Contempt Order is now final and no longer appealable.

**E.     Ms. Milner's motion for sanctions against CCM and its counsel**

Ms. Milner filed a motion for sanctions ("Sanctions Motion") against CCM and Mr. Mahaffey pursuant to Rule 9011 and the bankruptcy court's inherent authority. She sought over $113,000 in attorneys' fees for CCM's prosecution of the Contempt Motion.

Ms. Milner requested sanctions under Rule 9011 because Mr. Mahaffey had failed to undertake a reasonable prefiling inquiry and made patently incorrect arguments regarding executory contracts, the effect of the plan discharge, ownership of the Play Property, and her duties under the Settlement Agreement. She asserted that the Contempt Motion was meant to harass her and force her to release CCM from damage claims relating to the Play Property. She also argued that the court could exercise its inherent authority to award her attorneys' fees.

CCM and Mr. Mahaffey separately opposed the Sanctions Motion. CCM argued that the motion was untimely because Ms. Milner did not serve it until it was too late for CCM to withdraw the Contempt Motion and until after the court had already denied the Contempt Motion. It further argued that Ms. Milner did not identify any conduct or improper purpose attributable to CCM.

Mr. Mahaffey argued that the Sanctions Motion was deficient because Ms. Milner did not serve an unfiled copy of the motion twenty-one days prior to filing it. He also argued that sanctions are unavailable under the court's inherent authority where there is another basis for granting

10

sanctions (such as Rule 9011). Finally, Mr. Mahaffey argued that he conducted himself and made arguments in good faith. He said that he did not intend to harass Ms. Milner and that other counsel for CCM shared the same legal opinion that the Settlement Agreement was an executory contract.

The bankruptcy court held a hearing on the Sanctions Motion. The court was concerned that Ms. Milner's papers did not sufficiently identify each statement that was allegedly false or made in bad faith. Over Mr. Mahaffey's and CCM's objection, the court directed Ms. Milner to file a brief "identifying citations to the record that you're saying is offending, why it's offending, so that they know, they can respond." The court permitted Mr. Mahaffey and CCM to file responses.

In her supplemental brief, Ms. Milner argued that the court could sanction CCM and Mr. Mahaffey for their bad faith pursuant to its inherent powers. She pointed to particular instances of Mr. Mahaffey's bad faith:

- Asserting that the Settlement Agreement was an executory contract that was rejected during the bankruptcy case, even though CCM had considered whether to reject it but took no action;
- Filing the Contempt Motion to pressure Ms. Milner to sign a release, as evidenced by Mr. Mahaffey's e-mails;
- Misrepresenting a California state court case in the reply brief to the Contempt Motion;
- Submitting a false declaration as to the availability of CCM board

members to offer testimony;

- Failing to subpoena its trial witness or bring her to the hearing so that she could not be questioned as to her allegedly false declaration;
- Failing to turn over documents prior to the hearing; and
- Presenting false and misleading legal arguments at the hearing.

In response, Mr. Mahaffey argued that Ms. Milner conceded that Rule 9011 sanctions were unavailable. He contended that, because the alleged conduct was covered by Rule 9011, the court could not exercise its inherent authority. He also said that none of his arguments were made in bad faith because he conducted independent research, relied on the legal opinions of other attorneys, and had a sound basis for making those arguments. Finally, he argued that there was no improper purpose in filing the Contempt Motion.

The bankruptcy court issued its 126-page memorandum decision granting in part and denying in part the Sanctions Motion. It denied the Sanctions Motion as to CCM but granted it as to Mr. Mahaffey pursuant to its inherent authority.

The bankruptcy court held that sanctions were inappropriate under Rule 9011 because Ms. Milner did not serve Mr. Mahaffey with a copy of the Sanctions Motion at least twenty-one days prior to filing it and did not file the Sanctions Motion before the court decided the Contempt Motion, which necessarily meant that Mr. Mahaffey could not withdraw the Contempt Motion.

Nevertheless, the bankruptcy court held that it could exercise its inherent authority to sanction Mr. Mahaffey's bad faith conduct. It held that his misstatements of law and fact were both frivolous and reckless.

First, the bankruptcy court sanctioned Mr. Mahaffey for arguing that Ms. Milner's affirmative defenses in the State Court Action violated the discharge injunction. He did not cite any legal authority in the Contempt Motion in support of his contention that Ms. Milner could be held liable for defending herself. The court noted that he ignored *Boeing North American, Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018 (9th Cir. 2005), which stands for the proposition that a party who defends itself after a debtor "returns to the fray" post-discharge does not violate the discharge injunction.

Second, the court held that the Settlement Agreement was not an executory contract and that Mr. Mahaffey's arguments to the contrary were baseless. It was not swayed by his argument that he relied on other attorneys and faulted him for failing to conduct an independent factual or legal inquiry.

Third, the court held that Mr. Mahaffey's misrepresentation of legal authority was reckless and indicative of bad faith, not an honest mistake.

Fourth, the bankruptcy court held that the nonbankruptcy challenges to the enforceability of the Settlement Agreement were also frivolous and reckless and that his statements lacked a reasonable factual basis.

Fifth, the bankruptcy court ruled that Mr. Mahaffey's prefiling inquiry into the law and facts of the case was reckless and not reasonable.

13

The court held that Mr. Mahaffey failed to undertake a reasonable inquiry, including "basic legal research." It ruled that Mr. Mahaffey had crossed the line between zealous advocacy and "frivolous, reckless advocacy."

The bankruptcy court held that Mr. Mahaffey made these frivolous, reckless, and baseless arguments with an improper purpose: to increase litigation and expand the issues to force Ms. Milner to release her claims against CCM. Rather than bringing CCM's claims in the existing State Court Action, "he multiplied the litigation proceedings" with the "purpose of browbeating Milner into releasing her claims by forum shopping and bringing additional litigation in another court because he was not making the progress that he wanted in the pending state court litigation."

The bankruptcy court next considered the reasonableness of the requested attorneys' fees and allowed $69,400 in fees and $729.26 in costs.

The court issued its order ("Sanctions Order") granting in part and denying in part the Sanctions Motion. Mr. Mahaffey timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in sanctioning Mr. Mahaffey.

## STANDARDS OF REVIEW

We review for an abuse of discretion the bankruptcy court's decision

14

to award sanctions. *See Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 547 (9th Cir. 2004). We similarly review for an abuse of discretion the bankruptcy court's decision on the amount of sanctions. *See Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 831 (9th Cir. 1994).

To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

"Whether an appellant's due process rights were violated is a question of law we review de novo." *DeLuca v. Seare (In re Seare)*, 515 B.R. 599, 615 (9th Cir. BAP 2014) (citing *Miller v. Cardinale (In re DeVille)*, 280 B.R. 483, 492 (9th Cir. BAP 2002), *aff'd*, 361 F.3d 539 (9th Cir. 2004)). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

We review the bankruptcy court's factual findings for clear error. *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 378 (9th Cir. BAP 2011). A finding of fact is clearly erroneous if it is illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). The bankruptcy court's choice among multiple

plausible views of the evidence cannot be clear error. *United States v. Elliott*, 322 F.3d 710, 715 (9th Cir. 2003).

**DISCUSSION**

**A. The bankruptcy court properly exercised its inherent authority to sanction Mr. Mahaffey.**

Mr. Mahaffey argues that the bankruptcy court could not exercise its inherent authority to sanction him once it determined that Rule 9011 sanctions were unavailable. We disagree.

It is well settled that the bankruptcy court may sanction a party or an attorney under its inherent authority. *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) (holding that "an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power."). Mr. Mahaffey argues that the court cannot use its inherent authority to impose sanctions when other mechanisms are available.

The Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), rejected Mr. Mahaffy's position. It held that the unavailability of sanctions under a rule or statute did not displace the court's inherent sanction authority:

> There is, therefore, **nothing in the other sanctioning mechanisms** or prior cases interpreting them that warrants a conclusion **that a federal court may not, as a matter of law, resort to its inherent power** to impose attorney's fees as a

sanction for bad-faith conduct. This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions. **But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules.** A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees. Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. **But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.**

*Id.* at 50 (internal citation omitted) (emphases added).

The Ninth Circuit has stated that *Chambers*:

emphatically rejected the notion that . . . the sanctioning provisions in the Federal Rules of Civil Procedure displaced the inherent power to impose sanctions for bad faith conduct. . . . [G]iven the inadequacy of rules and statutes to sanction [appellants'] misconduct, the bankruptcy court correctly relied upon its inherent power as a sanctioning tool.

*In re DeVille*, 361 F.3d at 551.

Under controlling precedent in *Chambers* and *DeVille*, it was not error for the bankruptcy court to utilize its inherent authority to sanction Mr. Mahaffey. The unavailability of sanctions under Rule 9011 – due to Ms. Milner's failure to follow Rule 9011's procedures – did not deprive the court of its inherent power to impose sanctions.

**B.    The bankruptcy court did not abuse its discretion in sanctioning Mr. Mahaffey.**

Mr. Mahaffey argues that the court should not have imposed inherent power sanctions. We disagree and defer to the court's findings that Mr. Mahaffey acted frivolously and recklessly.

Federal courts, including bankruptcy courts, have inherent power to impose sanctions for a broad range of willful or improper litigation conduct. *See Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196 (9th Cir. 2003). "Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (citation omitted); *see also Fink*, 239 F.3d at 992 ("In reviewing sanctions under the court's inherent power, our cases have consistently focused on bad faith. . . . [A] specific finding of bad faith . . . must precede any sanction under the court's inherent powers." (citations and quotation marks omitted)).

The Ninth Circuit has stated that a court may impose sanctions pursuant to its inherent authority when it finds:

> willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose. . . . [A]n attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power.

18

*Fink*, 239 F.3d at 994.

In the Civil Rule 11 context, the Ninth Circuit has stated that frivolousness means "**both** baseless **and** made without a reasonable and competent inquiry." *Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431, 434 (9th Cir. 1996) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc)).

While there does not appear to be a single definition of recklessness, the Ninth Circuit has stated in the context of sanctions that "recklessness might be defined as a departure from ordinary standards of care that disregards a known or obvious risk of material misrepresentation." *Thomas v. Girardi (In re Girardi)*, 611 F.3d 1027, 1038 n.4 (9th Cir. 2010).

The Ninth Circuit has urged restraint: "forceful and effective representation often will call for innovative arguments. For this reason, sanctions should be reserved for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Primus Auto. Fin. Servs., Inc.*, 115 F.3d at 649 (citation and quotation marks omitted).

1. **Mr. Mahaffey's disregard of the "return to the fray" doctrine was frivolous and reckless.**

Mr. Mahaffey argued in the bankruptcy court that Ms. Milner violated the discharge injunction by asserting affirmative defenses in the State Court Action. However, Ms. Milner only raised those defenses because Mr. Mahaffey caused CCM to "return to the fray" post-discharge.

19

In the bankruptcy court, Mr. Mahaffey ignored binding authority and pressed ahead with the Contempt Motion. He also ignores this point on appeal. This is an independently sufficient basis to affirm the Sanctions Order.[2]

In *Ybarra*, the chapter 11 debtor received a discharge but then returned to the state court to resume prepetition litigation against her employer. She was ultimately unsuccessful, and her employer recovered attorneys' fees. The Ninth Circuit considered whether the fee award was barred by the discharge injunction. In determining that it was not, it stated that "we have held that post-petition attorney fee awards are not discharged where post-petition, the debtor voluntarily 'pursue[d] a whole new course of litigation,' commenced litigation, or 'return[ed] to the fray' voluntarily." 424 F.3d at 1024 (citation omitted). It further explained that, "[e]ven if a cause of action arose pre-petition, the discharge shield cannot be used as a sword that enables a debtor to undertake risk-free litigation at others' expense. Personal liability for fees incurred through the voluntary pursuit of litigation initiated post-petition is more consistent with the purpose of discharge." *Id.* at 1026 (citation omitted).

*Ybarra* is squarely on point, and Mr. Mahaffey has never even addressed it, let alone attempted to distinguish it.[3] When CCM filed the

---

[2] Because we agree with the bankruptcy court on this point, we need not address the other bases of its findings of recklessness and frivolousness.

[3] When the Panel directly questioned Mr. Mahaffey's counsel at oral argument as

20

State Court Action, it initiated new post-discharge litigation, so Ms. Milner was entitled to defend herself.

The bankruptcy court correctly held that "Milner defending herself in post-confirmation litigation initiated by CCM was not a violation of the discharge injunction since the reorganized debtor 'returned to the fray' by initiating litigation." The bankruptcy court also correctly held that Mr. Mahaffey's argument was incorrect and without any legal basis. It is inexcusable that an attorney should blatantly ignore binding precedent or fail to educate himself as to the law.

The bankruptcy court thus concluded that Mr. Mahaffey behaved frivolously and recklessly. It said that he completely ignored binding authority rejecting his position, and "[i]n proceeding with CCM's Contempt Motion, Debtor's Counsel failed to rebut these substantial legal arguments put forth by Milner, which he did at his peril."

We agree with the bankruptcy court's analysis. At bottom, Mr. Mahaffey is contending that the bankruptcy court's orders not only extinguished Ms. Milner's rights but barred her from arguing otherwise. Put simply, when CCM sued Ms. Milner, CCM said, "The bankruptcy court's orders mean this," which gave Ms. Milner the right to say, "No, they don't."

---

to why his choice to ignore *Ybarra* was not reckless, counsel deflected and discussed instead the objective contempt standard in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), rather than answering the Panel's question.

Mr. Mahaffey did not just make an incorrect legal argument, but he completely ignored binding authority to the contrary. He failed – both in the bankruptcy court and before this Panel – to provide any authority supporting his position or even to address Ms. Milner's arguments. It was not error for the court to conclude that Mr. Mahaffey's arguments and conduct were frivolous and reckless.

### 2. The bankruptcy court's finding of improper purpose was not clearly erroneous.

Mr. Mahaffey challenges the bankruptcy court's finding that he filed the Contempt Motion for the improper purpose of pressuring Ms. Milner to release her claims. He argues that he only sought to take advantage of the bankruptcy court's expertise. We find no error.

The Ninth Circuit has held that an "improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case," can support sanctions under a court's inherent authority. *Fink*, 239 F.3d at 994.

The bankruptcy court found, as a matter of fact, that CCM filed the Contempt Motion to forum shop, multiply the litigation, and "browbeat" Ms. Milner to release all of her claims against CCM. It specifically referenced the correspondence from Mr. Mahaffey in which he pressed Ms. Milner to sign the release and threatened to otherwise go forward with the Contempt Motion. This finding is not clearly erroneous.

### C. The bankruptcy court did not deny Mr. Mahaffey due process.

22

Mr. Mahaffey argues that the bankruptcy court denied him due process because he was not fully and timely apprised of his improper conduct. He is wrong.

Procedural due process requires notice and an opportunity to be heard. *See Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 870 (9th Cir. BAP 2004). According to the United States Supreme Court:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance[.]

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted).

In considering due process required for a sanctions award, the Ninth Circuit has stated that:

> whether the bankruptcy court's inherent power can support the attorney's fees and costs portion of the sanction imposed . . . depends on whether [debtor and counsel] were . . . "provided with sufficient, advance notice of exactly which conduct was alleged to be sanctionable and, furthermore . . . [were] aware that [they] stood accused of having acted in bad faith."

*In re DeVille*, 361 F.3d at 549 (quoting *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1225 (3d Cir. 1995)). Here, Mr. Mahaffey received notice of his sanctionable conduct, multiple warnings that

23

Ms. Milner would seek sanctions against him, and an opportunity to defend himself.

Mr. Mahaffey argues that the notice was insufficient under Rule 9011 and the court cannot disregard the procedural safeguards of Rule 9011. He fails to cite any authority for the novel proposition that the court cannot impose sanctions pursuant to its **inherent authority** until the movant complies with the procedures of **Rule 9011**. These are two different sources of sanction power with different procedures, standards, and purposes. There is ample binding authority for the proposition that a court may impose inherent power sanctions even if the party seeking sanctions botches the Rule 9011 procedures. *See In re DeVille*, 361 F.3d at 551 (holding that, although Rule 9011 sanctions were inappropriate given movant's failure to serve the motion, sanctions pursuant to the court's inherent authority were appropriate).

Mr. Mahaffey suggests that he was entitled to receive "repeated objections," before facing sanctions. There is no authority for this proposition.

He also argues that he was not given enough warning or sufficient notice of the specific conduct until after Ms. Milner filed her supplemental brief and that the bankruptcy court should not have permitted supplemental briefing. He complains that he "was denied his right to a proper hearing, one in which he was apprised of the specific conduct being alleged against him, **prior** to that hearing."

Unsurprisingly, Mr. Mahaffey offers no authority for the startling proposition that due process prohibits a court from requesting post-hearing briefing unless it holds another hearing. The bankruptcy court gave Mr. Mahaffey a month to respond to Ms. Milner's supplemental filing, and he took advantage of that opportunity. He does not describe anything concrete that he would have done at a second hearing that he could not have done in his supplemental filing; at oral argument, his counsel conceded that it cannot be known what evidence or argument he would have offered.

Finally, he contends that he was ambushed by the arguments in the supplemental briefing, because both the bankruptcy court and the parties had no idea as to the factual bases for the Sanctions Motion, which necessitated new arguments in the supplemental briefing. But the Sanctions Motion adequately put Mr. Mahaffey on notice of the offending conduct; the court merely directed Ms. Milner to list the exact dates, filings, statements, correspondence, and actions that supported her arguments. The basis of the Sanctions Order should not have been a surprise to Mr. Mahaffey.

The bankruptcy court did not deprive Mr. Mahaffey of due process.

**D.    The bankruptcy court did not err in calculating the award.**

Finally, Mr. Mahaffey argues that the bankruptcy court erred in awarding Ms. Milner fees incurred in prosecuting the Sanctions Motion. He argues that the Sanctions Motion was insufficient on its face and required

25

supplemental briefing, so he should not be required to pay for her counsel's "deficient litigation."

The bankruptcy court reduced fees for counsel's time spent on the supplemental briefing, recognizing that the itemization of specific conduct should have been included in the motion. We discern no abuse of discretion.

## CONCLUSION

The bankruptcy court did not abuse its discretion in sanctioning Mr. Mahaffey pursuant to its inherent authority. We AFFIRM.